COMMONWEALTH of Pennsylvania, Appellant,

v.

John JEFFERSON, Appellee.

Superior Court of Pennsylvania.

Argued Sept. 21, 1999.
Filed Nov. 10, 1999.

Greg A. Rowe, Asst. Dist. Atty., Philadelphia, for the Com., appellant.

Owen Larrabee, Asst. Public Defender, Philadelphia, for appellee.

Before SCHILLER, OLSZEWSKI, and BECK, JJ.

OLSZEWSKI, J.:

¶ 1 The Commonwealth appeals the order of the court below granting appellee's motion to dismiss pursuant to Pa. R.Crim.P. 6013(g). We reverse.

¶ 2 On March 31, 1998, appellee was convicted of attempted theft and criminal mischief in municipal court. He appealed his conviction to the Court of Common Pleas of Philadelphia County and requested a trial *de novo*. The court listed the trial date for June 3, 1998. In the meantime, on April 21, 1998, appellee was sentenced to ten to sixty months for an unrelated probation violation. Thus, he was in state prison (SCI Camp Hill) on his first trial date. Though a writ was prepared to transfer appellee, he was not brought down because there were no beds available in the city prison.

¶ 3 Due to prison overcrowding in Philadelphia, Deputy Mayor Diane Granlund has initiated a "priority" system. Under this system, she ensures that space is available in city jail only if the district attorney's office notifies her regarding the urgency in a case. In effect, she prioritizes the court's writ. If the district attorney does not give this notification and no beds are available, she cancels the writ. The district attorney's office, however, has declined to use the priority system because it contends that the system is in direct conflict with the court's official writ system. Because the district attorney has continued to reject this system, Deputy Mayor Granlund has continued to cancel writs for a lack of beds. *See* trial court opinion, 5/19/99, at 6. This was the scenario in this case as well.

¶ 4 The court relisted the trial for August 7, 1998, and issued a writ to bring appellee down from state prison. Again, however, Deputy Mayor Granlund canceled the writ because there were no beds available. The court set the third trial listing for October 8, 1998, and issued a third writ to transfer appellee. For the third time, Deputy Mayor Granlund canceled the writ for lack of beds and appellee

was not brought down. Appellee moved to dismiss pursuant to Pa.R.Crim.P. 6013(g) [hereinafter "Rule 6013"], which requires that a *de novo* trial in the court of common pleas begin within ninety days of the filing of the notice of appeal from the municipal court. Because 189 days had passed since appellee filed his appeal, the court granted the motion. The court also granted the motion to dismiss based on its discretionary authority over its courtroom. This appeal followed.

¶ 5 Appellant raises two issues for our review: (1) whether the court below erred in granting appellee's motion to dismiss pursuant to Rule 6013, and (2) whether the court below abused its discretion under *Commonwealth v. Shaffer*, 551 Pa. 622, 712 A.2d 749 (1998), which prohibits the trial court from using dismissal of criminal charges as a sanction against the Commonwealth unless absolutely necessary.

¶ 6 Our standard of review in evaluating Rule 6013 claims is the same as that for Rule 1100. *See, e.g., Commonwealth v. Haynes*, 339 Pa.Super. 165, 488 A.2d 602, 605 (1985) (explaining that "[s]ince Rule 6013 is similar to Rule 1100 we find the case law to be equally applicable to both rules"); *see also Commonwealth v. Jones*, 451 Pa.Super. 428, 679 A.2d 1297, 1299 (1996). In both cases, we review only for abuse of discretion. *See Commonwealth v. Matis*, 551 Pa. 220, 710 A.2d 12, 15 (1998) (citing *Commonwealth v. Edwards*, 528 Pa. 103, 595 A.2d 52 (1991)). We are limited "to the evidence in the record along with the findings of the trial court." *Id.* (citing *Commonwealth v. Fuchs*, 372 Pa.Super. 499, 539 A.2d 1307 (1988)).

¶ 7 Rule 6013(g) requires that "[a] trial de novo in the Court of Common Pleas shall commence within a period of 90 days after the notice of appeal from the Municipal Court is filed." Pa.R.Crim.P. 6013(g). "In all other respects the provisions of Rule 1100 shall apply to such trials

in the Court of Common Pleas." *Commonwealth v. Norm*, 433 Pa.Super. 512, 641 A.2d 318, 319 (1994).

¶ 8 The Commonwealth must establish two factors to show that Rule 1100 has not been violated: first, that the circumstances causing the postponement of trial were beyond the control of the Commonwealth; second, that it exercised due diligence in bringing the defendant to trial. *See* Pa.R.Crim.P. 1100(g).

¶ 9 First, the circumstances causing the postponement in this case were beyond the control of the Commonwealth. In *Commonwealth v. Nellom*, we stated clearly that a delay resulting from a failure to bring down a defendant despite a writ was not attributable to the Commonwealth. *See Commonwealth v. Nellom*, 388 Pa.Super. 314, 565 A.2d 770, 773 (1989). Consequently, the delay was beyond the Commonwealth's control.

¶ 10 Second, the Commonwealth has demonstrated due diligence by utilizing the traditional writ system. Due diligence is a fact-specific concept that is determined on a case-by-case basis. *See Commonwealth v. Wentzel*, 434 Pa.Super. 76, 641 A.2d 1207, 1208–09 (1994). Due diligence " 'does not demand perfect vigilance and punctilious care, but rather a reasonable effort.' " *Commonwealth v. Fisher*, 545 Pa. 233, 681 A.2d 130, 136 (1996) (quoting *Commonwealth v. Polsky*, 493 Pa. 402, 426 A.2d 610, 613 (1981)). The Commonwealth arranged for a writ on three separate occasions, and the court issued the writ each time. Deputy Mayor Granlund, however, refused to honor the writ, instead insisting that the Commonwealth abide by her priority system. We reject the notion that asking Deputy Mayor Granlund to honor a writ is necessary to demonstrate due diligence; due diligence is demonstrated by preparing a writ.

¶ 11 Writs are court orders, and Deputy Mayor Granlund's priority system, in effect, is a refusal to follow court orders. Due diligence cannot include aiding an offi-

cial in ignoring court orders by demanding adherence to an arbitrary new system. The practical effect of the priority system is to render writs obsolete. Should the district attorney's office utilize the priority system, we can only speculate as to what will suffice to bring down prisoners in the future. Once it does, such "priorities" will become mundane. We fear that prison officials will then need to adhere to some "superpriority" system to delineate them from normal priorities, and so on. We refuse to fault the Commonwealth for following the existing, official writ system. Deputy Mayor Granlund's priority system does not give rise to a new duty on the part of the Commonwealth; rather, it gives rise to a new duty on the part of the court to enforce its own writs. There is little doubt that the court can enforce its own writs, and it should do so. *See In re Investigating Grand Jury*, 495 Pa. 186, 433 A.2d 5, 6 (1981) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.") (citations omitted).

¶ 12 Neither can we ignore the dual purposes behind Rule 1100.

Rule 1100 "serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society." In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. The administrative mandate of Rule 1100 certainly was not designed to insulate the criminally accused from good faith prosecution through no fault of the Commonwealth.

\* \* \*

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 1100

must be construed in a manner consistent with society's right to punish and deter crime.... Strained and illogical judicial construction adds nothing to our search for justice....

*Commonwealth v. Genovese*, 493 Pa. 65, 425 A.2d 367, 369–71 (1981) (citations omitted). Dismissing the case against appellee does not serve the ends of justice; it in fact surrenders control of the criminal justice system to a city official. While the current system is not meeting the interests of justice in Philadelphia, we are not convinced that the solution is Deputy Mayor Granlund's priority system, as it has no basis in law. We also do not believe that the solution is to dismiss cases when prisoners are not brought down because they are not deemed "priorities." We can only encourage city officials and the district attorney's office to find a solution. This problem necessitates a political compromise that this Court is unable to provide.

¶ 13 The court below also relied on its discretionary power over its docket to dismiss the charges against appellee. The Commonwealth argues that the dismissal was an abuse of that discretion. We look to our Supreme Court's recent decision in *Commonwealth v. Shaffer*, 551 Pa. 622, 712 A.2d 749 (1998), for guidance.

¶ 14 In *Shaffer*, the Court reversed the trial court's order dismissing criminal charges in an effort to sanction the prosecutor. *See id.* at 751. Before trial, the Commonwealth had requested a time extension under Rule 1100. *See id.* at 750. The trial court granted the extension, ordering the Commonwealth to try the defendant within sixty days. *See id.* at 751. The Commonwealth failed to do so because the prosecutor was on vacation. *See id.* The trial court dismissed the criminal charges against the defendant in order to sanction the prosecutor for ignoring a court order. *See id.* The issue before our Supreme Court was "whether in imposing the severe sanction of dismissal of charges ... the trial court abused its discretion." *Id.* The Court held that the trial court

had abused its discretion because the sanction was "excessive." *Id.* at 753. While the Court recognized the importance of the court's control over its courtroom, it concluded that dismissal "should only be used in instances of absolute necessity." *Id.* at 752. We do not consider this case to be one of "absolute necessity," and indeed feel that dismissal was "excessive." Further, we must remember society's interest in criminal justice. "Dismissal of criminal charges punishes not only the prosecutor ... but also the public at large, since the public has a reasonable expectation that those who have been charged with crimes will be fairly prosecuted to the fullest extent of the law." *Id.* Thus, we hold that the trial court abused its discretion in dismissing the charges against appellee.

¶ 15 Order reversed. Jurisdiction relinquished.