**COMMONWEALTH OF
PENNSYLVANIA,**
Appellee

v.

**Jameel PRESTON, Appellant.**

Superior Court of Pennsylvania.

Argued April 27, 2006.

Filed July 13, 2006.

L. Roy Zipris, Public Defender, Philadelphia, for appellant.

Max Kaufman, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: DEL SOLE, P.J.E. and HUDOCK, JOYCE, STEVENS, LALLY-GREEN, TODD, GANTMAN, McCAFFERY and PANELLA, JJ.

OPINION BY HUDOCK, J.:

¶ 1 This is an appeal from an order that denied Appellant's petition to the court of common pleas for a writ of *certiorari*. We affirm.

¶ 2 On July 31, 2003, Appellant was arrested and charged with possession of a controlled substance (crack cocaine).[1] The preliminary arraignment was conducted on August 1, 2003, and the matter was held for trial in the Philadelphia Municipal Court. The Commonwealth was scheduled to turn over discovery documents on September 10, 2003, but the file was incomplete, and the case was continued. The Commonwealth handed over the discovery documents on October 9, 2003, and trial was set for November 6, 2003. However, the Commonwealth was not ready to proceed on the scheduled date because one of its witnesses was unavailable. It also was ascertained that the previously provided discovery was incorrect. Therefore, trial

1. 35 P.S. § 780–113(a)(16).

was continued until December 9, 2003. On that date, the Commonwealth once again was unable to provide the proper discovery materials. Finally, on January 5, 2004, the Commonwealth provided appropriate discovery, and trial was set for February 5, 2004.

¶ 3 Thereafter, Appellant presented a motion to dismiss pursuant to Rule of Criminal Procedure 1013(A)(2), as well as a motion for suppression. Both motions were heard on February 5, 2004, by the municipal court judge. The motions were denied and the matter immediately proceeded to trial. Appellant was found guilty and sentenced to serve three to six months of incarceration. Appellant filed a timely petition to the Court of Common Pleas of Philadelphia County seeking a writ of *certiorari* and requesting a discharge based on the purported violation of Rule 1013. A judge of the court of common pleas heard argument on Appellant's petition on July 19, 2004, and denied relief. This timely appeal followed. The trial court ordered Appellant to file a concise statement of issues raised on appeal pursuant to Rule of Appellate Procedure 1925(b). Appellant timely complied, identifying the following claim: whether the trial court erred in denying the writ of *certiorari. See* Statement of Matters Complained of on Appeal, 8/13/04, at 1.

¶ 4 On August 24, 2005, a three-judge panel of this Court affirmed the decision of the court of common pleas. However, the panel held that it was unable to reach the merits of Appellant's argument because he had neglected to provide a copy of a transcript needed to ascertain whether the court of common pleas correctly determined that no violation of Rule 1013 occurred in this case. Thereafter, Appellant filed a petition seeking panel reconsideration and/or reargument *en banc.* We granted reargument and directed the par-

ties to brief and argue the following issue: whether the Superior Court may find a claim to be waived based on counsel's failure to provide a necessary transcript when that transcript was ordered, produced, and incorporated as part of the certified record—but was not transmitted to the appellate court because of a "breakdown in the court system"?

¶ 5 The fundamental tool for appellate review is the official record of the events that occurred in the trial court. *Commonwealth v. Williams,* 552 Pa. 451, 715 A.2d 1101, 1103 (1998). To ensure that an appellate court has the necessary records, the Pennsylvania Rules of Appellate Procedure provide for the transmission of a certified record from the trial court to the appellate court. *Id.* The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal. *Commonwealth v. Bracalielly,* 540 Pa. 460, 658 A.2d 755, 763 (1995); *Commonwealth v. Baker,* 531 Pa. 541, 614 A.2d 663, 672 (1992); *Commonwealth v. Quinlan,* 488 Pa. 255, 412 A.2d 494, 496 (1980); *Commonwealth v. Young,* 456 Pa. 102, 317 A.2d 258 (1974). Thus, an appellate court is limited to considering only the materials in the certified record when resolving an issue. *Commonwealth v. Walker,* 878 A.2d 887, 888 (Pa.Super.2005). In this regard, our law is the same in both the civil and criminal context because, under the Pennsylvania Rules of Appellate Procedure, any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record. *Commonwealth v. Kennedy,* 868 A.2d 582, 593 (Pa.Super.2005); *Lundy v. Manchel,* 865 A.2d 850, 855 (Pa.Super.2004). The emphasis on the certified record is necessary because, unless the trial court certifies a

document as part of the official record, the appellate judiciary has no way of knowing whether that piece of evidence was duly presented to the trial court or whether it was produced for the first time on appeal and improperly inserted into the reproduced record. Simply put, if a document is not in the certified record, the Superior Court may not consider it. *Walker,* 878 A.2d at 888.

¶ 6 This Court cannot meaningfully review claims raised on appeal unless we are provided with a full and complete certified record. *Commonwealth v. O'Black,* 897 A.2d 1234, 1240 (2006). This requirement is not a mere "technicality" nor is this a question of whether we are empowered to complain *sua sponte* of *lacunae* in the record. In the absence of an adequate certified record, there is no support for an appellant's arguments and, thus, there is no basis on which relief could be granted.

¶ 7 The certified record consists of the "original papers and exhibits filed in the lower court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court." Pa.R.A.P.1921. Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty. *Commonwealth v. Kleinicke,* 895 A.2d 562, 575 (Pa.Super.2006) (*en banc*). To facilitate an appellant's ability to comply with this requirement, our Supreme Court adopted the following procedural rule effective as of June 1, 2004:

> The clerk of the lower court shall, at the time of the transmittal of the record to the appellate court, mail a copy of the list of record documents to all counsel of record, or if unrepresented by counsel, to the parties at the address they have

provided to the clerk. The clerk shall note on the docket the giving of such notice.

Pa.R.A.P.1931(d). As the explanatory comment to Rule 1931 indicates, if counsel (or a party) discovers that anything material has been omitted from the certified record, the omission can be corrected pursuant to the provisions of Rule of Appellate Procedure 1926. Under Rule 1926, an appellate court may direct that an omission or misstatement shall be corrected through the filing of a supplemental certified record. However, this does not alter the fact that the ultimate responsibility of ensuring that the transmitted record is complete rests squarely upon the appellant and not upon the appellate courts. Pa. R.A.P.1931.

¶ 8 With regard to missing transcripts, the Rules of Appellate Procedure require an appellant to order and pay for any transcript necessary to permit resolution of the issues raised on appeal. Pa. R.A.P.1911(a). If a cross-appeal has been taken, the cross-appellant shares the duty to order and pay for the necessary transcripts. Pa.R.A.P.1911(b). When the appellant or cross-appellant fails to conform to the requirements of Rule 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review. *Williams,* 715 A.2d at 1105. It is not proper for either the Pennsylvania Supreme Court or the Superior Court to order transcripts nor is it the responsibility of the appellate courts to obtain the necessary transcripts. *Id.*

¶ 9 In the absence of specific indicators that a relevant document exists but was inadvertently omitted from the certified record, it is not incumbent upon this Court to expend time, effort and man-

power scouting around judicial chambers or the various prothonotaries' offices of the courts of common pleas for the purpose of unearthing transcripts, exhibits, letters, writs or PCRA petitions that well may have been presented to the trial court but never were formally introduced and made part of the certified record. *Commonwealth v. Blystone*, 421 Pa.Super. 167, 617 A.2d 778, 783 n. 4 (1992). If, however, a copy of a document has been placed into the reproduced record, or if notes of testimony are cited specifically by the parties or are listed in the record inventory certified to this Court, then we have reason to believe that such evidence exists. *O'Black*, 897 A.2d at 1238. In this type of situation, we might well make an informal inquiry to see if there was an error in transmitting the certified record to this Court. *Id.* We might also formally remand the matter to the trial court to ascertain whether notes of testimony or other documentation can be located and transmitted. *Id.* If a remand is necessary, it is appropriate to direct the trial court to determine why the necessary documentation was omitted from the certified record. *Williams*, 715 A.2d at 1107. An appellant should not be denied appellate review if the failure to transmit the entire record was caused by an "extraordinary breakdown in the judicial process." *Id.* at 1106. However, if the appellant caused a delay or other problems in transmitting the certified record, then he or she is not entitled to relief and the judgment of the court below should be affirmed. *Id. See Commonwealth v. Barge*, 560 Pa. 179, 743 A.2d 429, 429–30 (1999) (holding that if documents are missing from the certified record because of a default by court personnel, an appellant is entitled to have his claims resolved on the merits, but if the absence of the evidence is attributable to the appellant's failure to comply with the relevant procedural rules,

the claims will be deemed to have been waived).

¶ 10 In this case, Appellant presented two motions, both of which were heard by the trial court on February 5, 2004. The matter then went immediately to trial. Rather than preparing one transcript covering the entire proceeding, the court reporter created two separate volumes with the same date. The notes of testimony for each motion comprise separate transcripts, with the trial transcript appended to the transcript of the suppression portion of the pre-trial hearing. The clerk of court transmitted only the notes of testimony pertaining to the suppression hearing and the trial. The separate transcript relevant to the Rule 1013 motion was never transmitted to this Court along with the rest of the certified record. Unfortunately, when counsel reviewed the list of record documents, he did not realize that the transcript dated February 5, 2004, did not contain the notes of testimony for the portion of the pre-trial hearing that dealt with Appellant's Rule 1013 claim. Consequently, counsel made no motion to supplement or correct the record until he was apprised of the problem when he received a copy of this Court's memorandum finding the Rule 1013 claim to be waived. At that point, counsel properly filed a motion on Appellant's behalf requesting panel reconsideration and/or reargument *en banc* accompanied by a petition to supplement the record that included an uncertified copy of the missing transcript. We granted permission to supplement the record with a certified copy of the missing transcript, and we also agreed to hear reargument *en banc*.

¶ 11 The question of whether to grant panel reconsideration so that the certified record may be completed is a determination that only can be made based on the totality of the facts of a particular

case viewed in light of the legal principles discussed above. Upon due consideration, we conclude that this particular appeal implicates the sort of breakdown in the judicial process contemplated by our Supreme Court in *Williams*. We decline to fault Appellant on the grounds that counsel of record failed to realize that it was necessary to certify two separate transcripts from the same pre-trial hearing because the transcript docketed for the relevant date did not, in fact, contain the information needed to permit meaningful review of the Rule 1013 claim. As the record has been supplemented properly at this time, we may proceed to consider Appellant's substantive argument.

¶ 12 Our standard of review for evaluating claims brought pursuant to Rule of Criminal Procedure 1013 is the same as that applied to claims made under Rule of Criminal Procedure 600. *Commonwealth v. Jefferson*, 741 A.2d 222, 224 (Pa.Super.1999).[2] The purpose of the rules is similar, and the case law applies equally to both. *Id.* When considering any "speedy trial" claim, the proper scope of review is limited to the evidence on the record from the evidentiary hearing and the findings of the trial court. *Id.* If the hearing court denied relief under Rule 1013, appellate courts must view the facts in the light most favorable to the Commonwealth as the prevailing party. *Commonwealth v. Jones*, 451 Pa.Super. 428, 679 A.2d 1297, 1299 (1996). In assessing a Rule 1013 issue, we are confined to determining whether the trial court committed an "abuse of discretion" in reaching its decision. *Commonwealth v. Hill*, 558 Pa. 238, 736 A.2d 578, 581 (1999); *Commonwealth v. Montgomery*, 861 A.2d 304, 309 (Pa.Super.2004). In *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 753 (2000), our Supreme Court explained "abuse of discretion" in the following terms:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. ·Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Id.* (quoting *Coker v. S.M. Flickinger Company, Inc.*, 533 Pa. 441, 625 A.2d 1181, 1185 (1993)).

¶ 13 When considering the trial court's ruling, an appellate court may not ignore the dual purpose behind Rule 600 and Rule 1013. *Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa.Super.2004) (*en banc* ), *appeal denied*, 583 Pa. 659, 875 A.2d 1073 (2005). The Rules serve two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. *Id.* "In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. *Id.* (quoting *Commonwealth v. Aaron*, 804 A.2d 39,

---

**2.** *Jefferson* was decided pursuant to former Rules 6013 and 1100, which have been renumbered as Rules 1013 and 600, respectively. The *Comment* to Rule 1013 states that a discussion of its underlying principles, as well as other explanatory material, may be found in the *Comment* to Rule 600.

42 (Pa.Super.2002) (*en banc*)). The necessity of weighing the rights of society as a whole as well as those of the criminal accused when considering a speedy trial rights claim in the context of Pennsylvania's procedural rules is not a recent innovation. Our Supreme Court clearly articulated this requirement decades ago. *See, e.g., Commonwealth v. Johnson,* 487 Pa. 197, 409 A.2d 308, 311 n. 4 (1979); *Commonwealth v. Roundtree,* 469 Pa. 241, 364 A.2d 1359, 1364 (1976).

¶ 14 The Pennsylvania Supreme Court adopted our speedy trial rules as an administrative means of protecting the constitutional rights embodied in the Sixth Amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution. *Commonwealth v. Shaffer,* 551 Pa. 622, 712 A.2d 749, 751 (1998) (opinion announcing the judgment of the Court).[3] *See Commonwealth v. Crowley,* 502 Pa. 393, 466 A.2d 1009, 1012 (1983) (explaining that the rules were adopted pursuant to the Supreme Court's supervisory powers for the purposes of reducing the backlog of criminal cases and providing an objective standard for protection of constitutionally mandated speedy trial rights). However, the Supreme Court's administrative mandate was neither designed nor intended to insulate a criminal accused from good faith prosecution. *Hunt,* 858 A.2d at 1238. In the absence of actual misconduct on the part of the Commonwealth specifically calculated to evade the fundamental speedy trial rights of an accused, the applicable speedy trial rule must be construed in a manner "consistent with society's right to punish and deter crime." *Commonwealth v. Ge-*

*novese,* 493 Pa. 65, 425 A.2d 367, 371 (1981); *Hunt,* 858 A.2d at 1238.

¶ 15 Dismissing criminal charges punishes the prosecutor. *Shaffer,* 712 A.2d at 752. It also punishes the public at large as the public has a "reasonable expectation that those who have been charged with crimes will be fairly prosecuted to the full extent of the law." *Id.* In weighing these matters, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused of committing a crime, but also must consider the collective right of the community to vigorous enforcement of the law. *Commonwealth v. Murray,* 879 A.2d 309, 313 (Pa.Super.2005). "Strained and illogical judicial construction adds nothing to our search for justice, but only serves to expand the already bloated arsenal of the unscrupulous criminal determined to manipulate the system." *Id.*

¶ 16 As noted, the purpose of Rule 1013 is the same as that of Rule 600, and both were designed to implement the speedy trial rights provided by the federal and state constitutions. *Commonwealth v. DeBlase,* 542 Pa. 22, 665 A.2d 427, 431 (1995). The constitutional provisions themselves continue to provide a separate and broader basis for asserting a claim of undue delay in appropriate cases. *Id.* We decline Appellant's invitation to sever consideration of an accused's rights under Rules 600 and 1013 from their constitutional underpinnings. As discussed more fully below, these constructs are not separable. Thus, we will not fault the trial court for citing to *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and its federal and state progeny in explaining

---

**3.** Our Supreme Court announced in *Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127, 133 (1972), that it was referring the question of "speedy trial rights" to the Pennsylvania Criminal Rules Committee for the

purpose of formulating a procedure embodying the mandate of the Sixth Amendment and Article 1, Section 9 of the Pennsylvania Constitution.

why it declined to grant either a discharge or a writ of *certiorari* and a new trial in this case.

■■■ ¶ 17 The first step in determining whether a technical violation of Rule 600 or Rule 1013 has occurred is to calculate the "mechanical run date." *Aaron*, 804 A.2d at 42. The mechanical run date is the date by which trial must commence under the relevant procedural rule. *Id.* In a municipal court case, the mechanical run date is ascertained by counting the number of days from the triggering event—*e.g.*, the date on which the preliminary arraignment occurred or on which the criminal complaint was filed—to the date on which trial must commence under Rule 1013. Pa.R.A.P. 1013(A)(2), (3). The mechanical run date can be modified or extended by adding periods of time in which the defendant causes delay. *Murray*, 879 A.2d at 313. It then becomes an "adjusted run date." *Id.*

¶ 18 Rules 600 and 1013 take into account both "excludable time" and "excusable delay." *Hunt*, 858 A.2d at 1241. "Excludable time" is defined by Rule 1013 itself as any period of time during which a defendant expressly waives his rights under the Rule. Pa.R.Crim.P. 1013(D)(1). Delays caused by the unavailability of the defendant or counsel also are excludable, as are delays for continuances granted at the request of the defendant or counsel. Pa.R.Crim.P. 1013(D)(2)(a), (b). "Excusable delay" is not expressly defined in either Rule 600 or in Rule 1013, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence. *Hunt*, 858 A.2d at 1241. *See id.*, 858 A.2d at 1241–42 (explaining manner in which excludable time, excusable delay and due diligence are

to be determined). *See also DeBlase*, 665 A.2d at 431 (discussing excludable time and excusable delay).

■■■ ¶ 19 In this case, the "triggering event" for calculating the mechanical run date was Appellant's preliminary arraignment. "Trial in a Municipal Court case shall commence no later than 180 days from the date on which the preliminary arraignment is held." Pa.R.Crim.P. 1013(A)(2). Under Rule 1013, "trial shall be deemed to commence on the date the Municipal Court judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere.*" Rule 1013(B). At any time "prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth *may* apply to the Court orally or in writing for an order extending the time for commencement of trial." Rule 1013(C)(1)(a) (emphasis added).

> Such motion shall allege facts in support thereof, and shall be granted only upon findings based upon a record showing that trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth and, if the delay is due to the Court's inability to try the defendant within the prescribed period, upon findings based upon a record showing the causes of the delay and the reasons why the delay cannot be avoided.

Rule 1013(C)(1)(c). Any order granting a motion for extension shall specify the date or period for commencement of trial. Rule 1013(C)(1)(d). "Trial shall be scheduled for the earliest date or period consistent with the extension request and the court's business, and the record shall so indicate." *Id.* Here, the Commonwealth filed no motion for extension.[4]

___

4. Rule 1013(C)(1)(a) is permissive rather than mandatory. A similar provision was deleted

¶ 20 Appellant was arraigned on August 1, 2003. The mechanical run date, therefore, fell on January 28, 2004, one hundred and eighty days after the arraignment. Trial commenced on February 5, 2004, eight days beyond the mechanical run date. The Commonwealth and Appellant agree that no excludable time is attributable to Appellant under the Rule. The adjusted run date, thus, is identical to and remains the same as the mechanical run date. However, to clearly indicate that we have taken into account the relevant factors, we shall refer to it as the "adjusted run date."

¶ 21 Our analysis does not stop at this point because we must determine whether any "excusable delay" is attributable to factors beyond the Commonwealth's control. The continuances granted in this case occurred because of the prosecutor's repeated failure to produce accurate discovery documents. Failure to provide mandatory discovery is not a *per se* basis for "excusable delay" of trial. *Commonwealth v. Taylor,* 409 Pa.Super. 589, 598 A.2d 1000, 1002–03 (1991). Failure to provide mandatory discovery, without more, does not toll the running of the adjusted run date. *Commonwealth v. Edwards,* 528 Pa. 103, 595 A.2d 52, 55 (1991). Moreover, if the delay in providing discovery is due to either intentional or negligent acts, or merely stems from the prosecutor's inaction, the Commonwealth cannot claim that its default was "excusable." *Id.*

¶ 22 In this case, no evidence was presented to the trial court indicating that the failure to provide Appellant with accurate discovery documents was caused by factors outside the prosecutor's control. Thus, we cannot attribute any "excusable delay" to the Commonwealth's failure to satisfy the mandatory discovery requirements. But it is equally true that no evidence was presented that could support the conclusion that the Commonwealth's default in this regard occurred because of a deliberate effort to violate Appellant's fundamental right to a speedy trial by evading Rule 1013. Perhaps the prosecutor could and should have made a more concerted effort to acquire the correct documents and provide them to Appellant at an earlier date. However, the cause of the Commonwealth's dereliction has not been made a matter of record. Due diligence must be judged on what was done by the authorities, not on what was "not done." *Commonwealth v. Jones,* 886 A.2d 689, 701 (Pa.Super.2005). We have no basis on which we could conclude that the Commonwealth committed "actual misconduct" as that term is contemplated by *Hunt, supra.* The record simply does not speak to whether the prosecutor was lax or whether his efforts were reasonable under some peculiar, but unspecified, set of circumstances. We decline to speculate in the absence of evidence.

¶ 23 The next question to be resolved is whether Appellant waived his claim under Rule 1013 by failing to object when his trial was scheduled beyond the adjusted run date. Our law is clear that a defendant has no duty to object when his trial is scheduled beyond the time period specified by the pertinent rule, so long as he does not indicate that he approves of or accepts the delay. *Commonwealth v. Brown,* 875 A.2d 1128, 1134–35 (Pa.Su-

from former Rule 1100, effective December 31, 1987. *See Commonwealth v. Gaines,* 407 Pa.Super. 94, 595 A.2d 141, 143 (1991). Rule 600 currently contains no such provision. *See also Commonwealth v. Kearse,* 890 A.2d 388, 393 (Pa.Super.2005) (explaining the manner in which Rule 600 claims must be decided in the absence of the permissive language deleted from former Rule 1100).

per.2005) (applying Rule 600); *Taylor,* 598 A.2d at 1003 (addressing municipal court speedy trial rule). If the defense indicates approval or acceptance of a continuance, the time associated with it constitutes a waiver. Pa.R.Crim.P. 1013(D)(1). In this case, Appellant never signified his approval of or agreement to the delay of his trial. We therefore conclude that no waiver occurred.

¶ 24 Nevertheless, if defense counsel fails to object when trial is scheduled beyond an adjusted run date, it is improper to grant a discharge unless the defendant was deprived of his underlying right to a speedy trial as that right is defined under the Sixth Amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution. *Crowley,* 466 A.2d at 1015. Any other approach would tempt a "result-oriented" practitioner to a course of "deliberate inadvertence" or "benign neglect" which would foreclose the possibility that the trial court could expedite the trial date. *Id.* Failure to assert a prophylactic rule when noncompliance with the rule arguably could have been remedied does not implicate the Sixth Amendment right to effective counsel. *Id.* However, failure to assert the basic constitutional right to a speedy trial does. *Id.*

¶ 25 Counsel did not object when Appellant's trial was scheduled beyond the adjusted run date. He was not required to do so, and there is no basis for a finding that Appellant waived his rights under Rule 1013. But this does not alter the fact that no objection was raised at a time when the municipal court judge possibly could have rearranged the court schedule and brought Appellant to trial before the run date. Under *Crowley,* a discharge would be improper in this case unless the record demonstrates that Appellant's rights under the Sixth Amendment or Article 1, Section 9 of the Pennsylvania Constitution were violated. For the reasons discussed below, we conclude that Appellant was not deprived of his constitutional right to a speedy trial.

¶ 26 The record discloses that on January 5, 2004, more than three weeks before the adjusted run date, the Commonwealth satisfied the requirements of mandatory discovery and was prepared to go to trial. N.T., 2/5/04, at 4. On that date, the Commonwealth indicated its readiness to proceed and orally requested the municipal court judge to set the earliest possible trial date. *Id.* at 4–5; Trial Court Opinion, 9/9/04, at 2. *See* Trial Court Docket, 1/5/04 (designating this case as "MBT" ("must be tried")). We note that Appellant does not contend that, at the last status conference before the adjusted run date, the prosecutor failed to ask for the earliest possible trial date. This Court will find that the Commonwealth acted with due diligence if, prior to the expiration of the adjusted run date, the prosecutor indicates readiness to try the case and requests the earliest possible trial date consistent with the municipal court's business. *Jones,* 679 A.2d at 1299. The record demonstrates that the prosecutor did so in this case and we, therefore, find that the Commonwealth acted with "due diligence" as that term applies in municipal court cases.[5]

---

5. We understand Appellant's argument concerning the Commonwealth's purported lack of due diligence but find it to be misguided. It has been said that the Commonwealth must demonstrate that it acted with due diligence at the last listing before the adjusted run date and at all subsequent listings. *See, e.g., Commonwealth v. Burke,* 344 Pa.Super. 288, 496 A.2d 799 (1985). However, as we recently explained in *Commonwealth v. Kearse,* 890 A.2d 388, 393 (Pa.Super.2005), *Burke* was decided under a version of Rule 1100 (now Rule 600) that contained language which has been deleted from the current formulation of Rule

¶ 27 Judicial delay may justify postponing trial beyond the adjusted run date if the Commonwealth was prepared to commence trial prior to the expiration of the mandatory period but the court was unavailable because of "scheduling difficulties and the like." *Crowley*, 466 A.2d at 1011. It would be "ill-advised" to require courts to continually arrange and rearrange their schedules to achieve a rigid accommodation of the deadlines imposed by Pennsylvania's "speedy trial" procedural rules. *Id.* at 1013. Any such interpretation of Rules 600 or 1013 would require judges, prosecutors, and defense attorneys to be available at all times to try defendants whose adjusted run date is about to expire. *Id.* The procedural rules were designed to promote the administration of criminal justice within the context of the entire judicial system, "not to render that system hostage to its own closed logic." *Id.* at 1014.

¶ 28 The twin goals of efficiency and ease in the administration of criminal justice are worthy but "they should not be exalted at the expense of justice." *Id.* It is long-established that judicial delay may serve as a basis for extending the period of time within which the Commonwealth may commence trial so long as the prosecutor was prepared to commence trial prior to the expiration of the mandatory period but the court, because of scheduling difficulties or "the like," was unavailable. *Common-*

*wealth v. Malgieri*, 889 A.2d 604, 607 (Pa.Super.2005). While the trial court may be required to rearrange its docket, if possible, when judicial delay has caused a lengthy postponement beyond the period prescribed by the prophylactic procedural rules, it should not be required to do so to avoid a delay of under thirty days. *Crowley*, 466 A.2d at 1014.

¶ 29 We very recently reiterated the Supreme Court's "thirty day" judicial delay rule and applied it in *Malgieri*, 889 A.2d at 607–08. Moreover, we previously followed *Crowley* in *Commonwealth v. Nesmith*, 425 Pa.Super. 291, 624 A.2d 1078, 1082 (1993), reversing a dismissal pursuant to Rule 6013 (now 1013) which had been granted on the grounds that trial occurred one day beyond the adjusted run date. Also applying *Crowley* in *Commonwealth v. Gaines*, 407 Pa.Super. 94, 595 A.2d 141, 143 (1991), we reversed the dismissal of criminal charges based upon an administrative delay of eight days past the adjusted run date which was triggered by our remand to the trial court for retrial after direct appeal. *Id.*, 595 A.2d at 143. Similarly, in *Commonwealth v. Wamsher*, 395 Pa.Super. 384, 577 A.2d 595 (1990), we reinstated criminal charges that were dismissed because court congestion required scheduling a retrial ten days past the mechanical run date after the accused was permitted to withdraw his guilty plea.

600. *See* footnote 4, *supra*. More significantly, in *Commonwealth v. Hawk*, 528 Pa. 329, 597 A.2d 1141, 1145 (1991) our Supreme Court ruled that the Commonwealth must demonstrate that it exercised due diligence at all times during the pendency of a case. Once the Commonwealth demonstrates that it was prepared to proceed throughout the pendency of a case, it has demonstrated that due diligence. *Commonwealth v. Robbins*, 900 A.2d 413, 415 (2006). Finally, we note that the "listing for status" procedure in the municipal court system is not the same thing as a

trial listing in the court of common pleas. *Commonwealth v. Robinson*, 410 Pa.Super. 79, 599 A.2d 214, 217 (1991). Although we agree with Appellant that the municipal court's status conferencing procedure cannot be relied upon to defeat a valid Rule 1013 claim, that point has no bearing here. *Id.* Our decision instantly has nothing to do with the status conference held in this case other than the fact that the Commonwealth used that occasion to request the earliest possible trial date.

¶ 30 We emphasize the fact that the relevant inquiry in this case is whether the Commonwealth was prepared to go to trial before the adjusted run date and whether trial could be scheduled within thirty days of that run date. If the Commonwealth waits until after the adjusted run date to seek a trial date or if the earliest possible trial date occurs more than thirty days beyond the adjusted run date, it is obvious that the "thirty day judicial delay" rule has no applicability whatsoever. Thus, we need not address hypothetical situations in which the Commonwealth waits until the eleventh hour to ask for the earliest possible trial date but the court schedule cannot accommodate the request until more than thirty days after the adjusted run date. This particular principle simply would not apply in such a situation.

¶ 31 In the present case, Appellant's trial was delayed only eight days beyond the adjusted run date. Applying the principles set forth in *Crowley, Gaines* and *Wamsher*, we find that Appellant's trial was not delayed for so lengthy a period as to require dismissal under Rule 1013. As our Supreme Court has noted, short delays beyond the adjusted run date of a procedural rule do not seriously implicate a defendant's Sixth Amendment right to a speedy trial under *Barker v. Wingo, supra*, nor do they provide a disincentive for states to remedy court congestion. *Crowley*, 466 A.2d at 1014 n. 9. We conclude that Appellant's rights under the federal and state constitutions were not violated and that the trial court did not commit an abuse of discretion in declining to dismiss the charges or to grant a writ of *certiorari* on Rule 1013 grounds.

¶ 32 Order affirmed.