J-S24037-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL CHARLES TOY | : | |
| | : | |
| Appellant | : | No. 1616 WDA 2016 |

Appeal from the Judgment of Sentence of June 10, 2016
In the Court of Common Pleas of Venango County
Criminal Division at No(s): CP-61-CR-0000528-2015

BEFORE: PANELLA, STABILE, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JUNE 07, 2017**

Daniel Charles Toy ("Appellant") appeals from the judgment of sentence entered in the Court of Common Pleas of Venango County after a jury convicted him of Driving Under the Influence ("DUI") of alcohol, Public Drunkenness, and Disorderly Conduct.[1]  Sentenced to three to twelve months' incarceration, fines, and costs, Appellant contends that the trial court erred in denying his post-sentence motion seeking vacation of judgment of sentence and remand for a new suppression hearing.  We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(a)(1), 18 Pa.C.S. § 5505, and 18 Pa.C.S. § 5503(a)(1), respectively.

The trial court aptly summarizes the factual and procedural history of the case as follows:

On July 19, 2015, police responded to a call of an active fight at the Country Fair, a gas/convenience store…. Patrolman Karns, along with two other officers, responded to the call around 2:45 AM. Upon arrival at the Country Fair, Patrolman Karns saw the Defendant (hereinafter "Appellant") toss an object to the ground, which was recovered and found to be a knife. Patrolman Karns also took notice of blood on Appellant's face. These factors led him to believe Appellant was involved in the fight to which Patrolman Karns was responding. Further, Patrolman Karns noticed a strong odor of alcohol emanating from Appellant, along with glassy eyes.

In the course of investigating the fight and who was involved…, Patrolman Karns went into the Country Fair to view surveillance footage. In the course of sorting out what happened at the scene relative to the fight, the officers responding to the scene, including Patrolman Karns, questioned the individuals there at Country Fair's parking lot. While Patrolman Karns was standing next to Appellant, Appellant spontaneously relayed he had been involved in the fight, and volunteered that prior to that he had been drinking at a local bar after which he had driven to the Country Fair parking lot. At that point, per the parties' factual stipulations, Appellant was placed under arrest.

Patrolman Karns admitted Appellant was "detained" while police on the scene questioned him and other people at the scene when responding to the call regarding an active fight scene. While Patrolman Karns was viewing the surveillance footage, he had another officer with Appellant to ensure that Appellant did not leave. However, it was not until after Patrolman Karns had viewed the video surveillance footage and Appellant spontaneously and voluntarily relayed the inculpatory statements to the officer that Appellant was placed under arrest for driving under the influence.

\*\*\*

The Information was filed October 16, 2015, charging Appellant with [DUI]/General Impairment/Refusal (Second Offense), a misdemeanor of the first degree; public drunkenness/similar

misconduct, a summary offense; and disorderly conduct, a summary offense. The Preliminary Hearing was held September 30, 2015, after which the charges were bound over to the Court of Common Pleas.

Appellant filed an Omnibus Pre-Trial Motion ["OPTM"] to Suppress Evidence [on] December 10, 2015.[2] A hearing on the OPTM was held January 26, 2016. The motion sought to dismiss inculpatory statements made by Appellant while in what Appellant characterized as a "custodial interrogation" at the Country Fair parking lot. The OPTM was, thereafter, denied in [the trial court's] Order of Court dated January 29, 2016.

Appellant was thereafter tried and convicted on March 18, 2016, of [DUI], where Appellant did refuse testing of blood.[] Subsequently, Appellant was sentenced [as noted above]. [The trial court] held argument on [Appellant's] Post Sentence Motion on September 27, 2016, at which time [the trial court] denied said motion per [its] Order of Court dated that same day. On October 19, 2016, Appellant[, through new counsel,] filed his Notice of Appeal relative to his Post Sentence Motion. [The trial court] directed, by Order of Court dated October 20, 2016, that Appellant file his [Pa.R.A.P.] 1925(b) Concise Statement, which Appellant did on November 7, 2016.

Trial Court Opinion, at 2-4.

Appellant presents the following question for our review:

**[DID] THE POST SENTENCE COURT ERR[] AS A MATTER OF LAW OR ABUSE[] ITS DISCRETION IN DENYING [APPELLANT'S] POST SENTENCE MOTION?**

Appellant's brief at 5.

At the hearing on Appellant's post-sentence motion, counsel for

Appellant asked the trial court to vacate judgment of sentence with respect

_____

[2] At the suppression hearing, neither the Commonwealth nor Appellant presented witnesses but, instead, stipulated to the Preliminary Hearing transcript. *See* Trial Court Opinion, November 21, 2016, at 1-2.

to DUI and remand for a new suppression hearing based on Patrolman Karn's previously unavailable testimony implicating Appellant's **Miranda** rights.[3] According to both parties and the trial court, Patrolman Karns testified at trial that he had already placed Appellant in handcuffs, but

_____

[3] We understand Appellant's motion to re-open his suppression hearing as akin to that contemplated in the Pennsylvania Supreme Court decision in **In re L.J.**, 79 A.3d 1073 (Pa. 2013), which, inter alia, "reinforce[d] the procedure required for the review of the denial of a suppression motion and the re-opening of the suppression hearing to consider previously unavailable evidence." **Id**. at 1088.

Among the considerations made by the Supreme Court in outlining this procedure was whether counsel asked the trial court to reconsider its earlier suppression ruling in light of new testimony adduced at trial and whether counsel sought to scrutinize the new testimony during cross-examination. **Id**. Additionally, **In re L.J.** identified several salutary purposes to allowing the augmentation of the suppression record, including "giv[ing] the trial court the opportunity to re-open the suppression hearing to consider the new evidence outside the presence of the jury[,]" and "giv[ing] the defendant a meaningful opportunity to formulate and present a defense to the new evidence . . . without concern that such a defense would waive the defendant's Fifth Amendment right against self-incrimination [at trial]." **Id.** at 1088 n.17. Given the Court's observations, it may reasonably be inferred that a party seeking augmentation of the suppression record must make an appropriate motion at the earliest available opportunity.

As we discuss below, we lack a record of Appellant's jury trial, so we cannot confirm whether Appellant moved for an immediate hearing to augment the suppression record outside the presence of the jury. We also cannot ascertain whether Appellant attempted to develop the apparent discrepancies between Patrolman Karns' suppression and trial testimonies to illustrate, inter alia, the need to proceed to a suppression augmentation hearing. Given Appellant's waiver of his claim for failure to supply a record of his jury trial, **see** infra, we do not address whether Appellant satisfied procedural requirements to obtaining a suppression augmentation hearing where he apparently waited until post-trial motions to ask the court for a new suppression hearing.

without **Miranda** warnings, when Appellant admitted to driving himself to the Country Fair convenient store. This apparent testimony diverged from Karns' prior testimony at the preliminary hearing, stipulated to at the suppression hearing, that he did not immediately place Appellant in handcuffs at the outset of his investigation. **See** N.T. Preliminary Hearing, 9/30/15, at 10.

As a threshold matter, however, we note that Appellant fails to provide this Court with a transcript of the jury trial. For this reason alone, we are constrained to find Appellant's claim waived, for the absence of a jury trial transcript impedes our ability to review his claim and assess whether the trial court erred or abused its discretion in denying him a new suppression hearing and trial. **See Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa. Super. 2006) (*en banc*) ("When the appellant [ ] fails to conform to the requirements of [Pa.R.A.P.] 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review.").[4]

We observe, parenthetically, that Appellant predicates his claim of prejudice on the argument that "the Commonwealth's only evidence of the Appellant having operated a motor vehicle and consumed alcohol was from the Appellant's statements." Appellant's brief at 10. A central feature to

_____

[4] Rule 1911 has since been amended. **See** 46 Pa.B. 7801 (Dec. 17, 2016).

Patrolman Karns' testimony at the preliminary hearing was that he based the DUI arrest on his observation of the convenient store's surveillance video depicting Appellant driving into the parking lot and alighting his vehicle just minutes before the police arrived.[5] While we have no way to discern whether the Commonwealth and Patrolman Karns neglected to introduce this critical testimony at trial, we note this Court has previously applied harmless error analysis to statements obtained in violation of **Miranda** if, *inter alia*, "the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence[.]" **Commonwealth v. Cornelius**, 856 A.2d 62, 76 (Pa.Super. 2004). Our reliance on waiver doctrine for Appellant's failure to

_____

[5] At Appellant's Preliminary Hearing, Patrolman Karns testified as follows:

> **Q:** Okay. And did you have an estimated time of how long he'd been there [convenience store] before your arrival?
>
> **KARNS:** It was within minutes.
>
> **Q:** On that video were you able to see his vehicle with him driving it?
>
> **A:** Yes.

N.T., 9/30/15, at 7.

In addition, Patrolman Karns prepared an Affidavit of Probable Cause in which he stated "[y]our affiant viewed security camera footage that showed [Appellant] operating the vehicle when it was driven into the parking lot and parked which was just minutes before officers arrived on scene. [Appellant] was then placed under arrest for DUI." Police Criminal Complaint, filed 7/20/15.

request the jury trial notes of testimony, however, obviates the need to discuss this area of decisional law further.

Judgment of sentence is AFFIRMED.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/7/2017