J-A06021-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: MARY J. WILKOSZ, AN ALLEGED INCAPACITATED PERSON | : IN THE SUPERIOR COURT OF<br>:     PENNSYLVANIA<br>: |
| APPEAL OF: JOAN WILKOSZ | : No. 965 WDA 2017 |

Appeal from the Decree May 31, 2017
in the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): 02-17-1578

BEFORE: BENDER, P.J.E., SHOGAN, and STRASSBURGER, JJ.*

MEMORANDUM BY STRASSBURGER, J.: **FILED APRIL 13, 2018**

Joan Wilkosz appeals from the decree entered on May 31, 2017, which *inter alia*, declared her mother, Mary J. Wilkosz, an incapacitated person and appointed Joan's sister, Patricia Wilkosz, as guardian. We affirm.

Mary is the mother of three adult children, Joan, Patricia, and David.[1] Mary is in her eighties and is suffering from Alzheimer's disease, which has impacted her ability to care for herself. After approximately a year of conflict between Joan and Patricia over their mother's care, on March 15, 2017, Joan filed a petition to adjudicate Mary an incapacitated person and to appoint Joan as guardian of Mary's person.[2] According to Joan, Patricia "has frequently interfered with [Mary's] ability to exercise her limited judgment and decision-

_____

[1] David suffered from a brain tumor, which resulted in brain damage, and has lived with Mary since 2012.

[2] The petition also requested the appointment of Aligned Partners Trust Company as guardian of Mary's estate.

*Retired Senior Judge assigned to the Superior Court.

making." Petition, 3/15/2017, at ¶ 35. Moreover, Joan alleges that Patricia has not kept Joan informed of Mary's health issues and has cancelled necessary medical appointments for Mary. Id. at ¶ 39. The orphans' court appointed counsel on Mary's behalf, who filed an answer to the petition. Counsel agreed that Mary should be adjudicated an incapacitated person; agreed that Aligned Partners should be appointed guardian of Mary's estate; but disagreed that Joan should be appointed guardian of Mary's person. Patricia also filed an answer and counterclaim to Joan's petition, agreeing that Mary was an incapacitated person; but suggesting that the orphans' court should appoint Patricia as guardian of both Mary's estate and person.

A hearing was scheduled for May 11, 2017 (Guardianship Hearing). On May 9, 2017, prior to the Guardianship Hearing, at a hearing on an emergency motion in connection with this case (Emergency Hearing), the issue of whether Mary should appear at the Guardianship Hearing was raised. Joan argued that a sworn statement from Mary's doctor, Dr. Nenad Bugarija, which stated Mary's "attendance … at [a Guardianship Hearing], would cause her unnecessary stress and could possibly be a derailing event," was insufficient to preclude her attendance at the Guardianship Hearing.[3] N.T., 5/9/2017, at 16. The orphans' court decided that Mary did not have to appear for the Guardianship Hearing, concluding that the doctor's statement was "thin," but

_____

[3] This sworn statement is not included in the certified record.

concluding that "an 86-year-old woman doesn't need to be put through this."

*Id*. at 21. The Guardianship Hearing was held on May 11 and 12, 2017, without Mary present.[4] On May 31, 2017, the orphans' court entered an order

_____

[4] This transcript is not included in the certified record on appeal. The only transcript contained in the certified record is the transcript from the Emergency Hearing. Generally, "under the Pennsylvania Rules of Appellate Procedure, any document which is not part of the officially certified record is deemed non-existent[.]" ***Commonwealth v. Preston***, 904 A.2d 1, 6 (Pa. Super. 2006) (*en banc*). "It is not proper for either the Pennsylvania Supreme Court or the Superior Court to order transcripts nor is it the responsibility of the appellate courts to obtain the necessary transcripts." ***Id***. at 7.

> In the absence of specific indicators that a relevant document exists but was inadvertently omitted from the certified record, it is not incumbent upon this Court to expend time, effort and manpower scouting around judicial chambers or the various prothonotaries' offices of the courts of common pleas for the purpose of unearthing transcripts, exhibits, letters, writs or PCRA petitions that well may have been presented to the trial court but never were formally introduced and made part of the certified record. If, however, a copy of a document has been placed into the reproduced record, or if notes of testimony are cited specifically by the parties or are listed in the record inventory certified to this Court, then we have reason to believe that such evidence exists. In this type of situation, we might well make an informal inquiry to see if there was an error in transmitting the certified record to this Court.

***Id***. at 7–8 (citations omitted).

Here, Joan included a copy of the transcript in the reproduced record. Therefore, consistent with the suggestion of ***Preston***, we made an informal inquiry to the Prothonotary to see if there was an error in transmitting the record. The clerk of the orphans' court informed this Court that the Guardianship Hearing transcript was not filed in the orphans' court. Thus, under these circumstances, this Court could consider any claim that depends upon this transcript to be waived. ***See id***. However, because we conclude we are able to resolve these issues without the transcript, we decline to find waiver.

adjudicating Mary an incapacitated person; appointing Aligned Partners as guardian of her estate; and appointing Patricia as guardian of her person. Joan timely filed a notice of appeal, and both Joan and the orphans' court complied with Pa.R.A.P. 1925.

On appeal, Joan sets forth two issues for our review.

[1.] May the court ignore language of the Guardianship Act of 1992 requiring the appearance of the alleged incapacitated person at the hearing if she would not be physically or mentally harmed by attending?

[2.] May the court ignore the language of the Power of Attorney Act requiring the court to appoint an alleged incapacitated person's agent as [her] guardian, when there is no credible evidence of the agent's disqualification or any good cause not to appoint the agent?

Joan's Brief at 6.

We begin by addressing the need for Mary's appearance at the Guardianship Hearing, which is governed by 20 Pa.C.S. § 5511(a), and provides, in relevant part, as follows: "The alleged incapacitated person shall be present at the hearing unless: … the court is satisfied, upon the deposition or testimony of or sworn statement by a physician or licensed psychologist, that his physical or mental condition would be harmed by his presence[.]" 20 Pa.C.S. § 5511(a)(1).

Joan argues that (1) the orphans' court erred in relying on Dr. Bugarija's sworn statement because it was not made part of the record, and (2) even if the orphans' court could rely on the statement, such statement was insufficient as a matter of law because it merely stated Mary "could" be

harmed, not that she "would" be harmed. Joan's Brief at 24-26. Neither argument entitles Joan to relief.

First, we conclude that Joan has waived for appeal her claim that she is entitled to relief due to the fact that Dr. Bugarija's statement is not part of the certified record. At the Emergency Hearing, Joan's counsel stated that he purposely did not attach the sworn statement to the motion. **See** N.T., 5/9/2017, at 16 (counsel for Joan stating, "Dr. Bugarija's sworn statement, which I did not attach to the [motion] but I believe has been delivered to you"). Then, when it was clear during the hearing that the orphans' court was relying on the statement, counsel did not object, even though it had not been entered into evidence. Thus, we conclude Joan cannot now argue that the orphans' court erred in relying on this statement. **See Commonwealth v. McGriff**, 160 A.3d 863, 866 (Pa. Super. 2017) ("[I]t is well-settled that a party must make a timely and specific objection at trial, and the failure to do so results in waiver of that issue on appeal.").

Moreover, even if Joan had not waived this claim, she would not be entitled to relief on the merits of this issue. In addition to Dr. Bugajira's statement, Mary's counsel provided the following information.

> There is no question as to [Mary's] capacity. I think we're all in agreement we're not contesting her capacity. She is incapacitated and with the turmoil in her family she certainly needs a guardian of her person and guardian of her estate. I'm her advocate. To bring her into court will be too upsetting to her. I've met her. I've spent time with her. I know her enough that, you know, she has said to me, do I have to go to court, and I said it's your decision. She does not want to see her daughters fighting. It's upsetting to

- 5 -

her. In the alternative, we could depose [Dr. Bugarija] before the hearing and maybe he can say the magic words that will suffice for [counsel for Joan].

N.T., 5/9/2017, at 20.[5]

After hearing all of this information, the orphans' court held that the evidence

indicated that the interests of [Mary] were better served by not compelling her attendance. More particularly, given that an objective was to enable [Mary] to continue to live with some measure of independence and to reside in her own home, the caution expressed as to worsening her condition by compelling attendance was not to be disregarded.

Orphans' Court Opinion, 9/5/2017, at 6.

Based on the foregoing, we conclude that the orphans' court did not err as a matter of law or abuse its discretion in concluding that Mary should not be compelled to attend the guardianship hearing. All parties agreed that Mary was suffering from Alzheimer's disease, and the appointment of a guardian of her person was necessary. The issue at the hearing was who that guardian should be. In addition, Mary was represented by counsel at the hearing, ensuring her interests were protected. Finally, it was evident, even from

_____

[5] In response, counsel for Joan did not request a deposition of Dr. Bugajira. However, it appears that at some point, Joan did conduct a telephone deposition with Dr. Bruce Wright on April 27, 2017. That deposition is not included in the certified record, but the orphans' court cites to a portion of it in its opinion. Specifically, the orphans' court cites to the following regarding Mary's attendance at the hearing: "I don't think she would be harmed. I'm not sure how much she would understand, and she might get anxious or frustrated or confused with the proceedings, but I can't say that she would be harmed." Orphans' Court Opinion, 9/5/2017, at 5.

Joan's witness, that Mary, at a minimum, could be frustrated and confused by the proceedings. It was within the orphans' court's discretion to determine that this constituted harm within the meaning and purpose of this statute, and we will not disturb it on appeal.

We now turn to Joan's second issue on appeal, where she contends first that the orphans' court erred in not considering the interplay between the Power of Attorney Act and the Guardianship Act. Joan's Brief at 26-33.

The Power of Attorney Act provides, in relevant part, the following.

> A principal may nominate, by a durable power of attorney, the guardian of his estate or of his person for consideration by the court if incapacity proceedings for the principal's estate or person are thereafter commenced. The court shall make its appointment in accordance with the principal's most recent nomination in a durable power of attorney except for good cause or disqualification.

20 Pa.C.S. § 5604(c)(2).

The Guardianship Act provides, in relevant part, as follows.

> The court may appoint as guardian any qualified individual, a corporate fiduciary, a nonprofit corporation, a guardianship support agency under Subchapter F (relating to guardianship support) or a county agency. In the case of residents of State facilities, the court may also appoint, only as guardian of the estate, the guardian office at the appropriate State facility. The court shall not appoint a person or entity providing residential services for a fee to the incapacitated person or any other person whose interests conflict with those of the incapacitated person except where it is clearly demonstrated that no guardianship support agency or other alternative exists. Any family relationship to such individual shall not, by itself, be considered as an interest adverse to the alleged incapacitated person. If appropriate, the court shall give preference to a nominee of the incapacitated person

- 7 -

20 Pa.C.S. § 5511(f).

Thus, there is no mandatory language contained in either Act. Instead, both statutes permit the orphans' court to exercise discretion – the Power of Attorney Act permits disqualification for "good cause shown" and the Guardianship Act uses the qualifying language "if appropriate." Thus, assuming *arguendo* that the 2014 power of attorney signed by Mary appointing Joan is valid and has never been revoked,[6] the orphans' court was not required to appoint her. Instead, it could consider the evidence presented at trial in determining whether her appointment was "appropriate" or whether she should not be appointed "for good cause shown."

In evaluating this issue, we review the decision of the orphans' court for an abuse of discretion. *See Estate of Haertsch*, 649 A.2d 719, 720 (Pa. Super. 1994) ("The selection of a guardian for a person adjudicated incapacitated lies within the discretion of the trial court whose decision will not be reversed absent an abuse of discretion."). "An abuse of discretion requires proof of more than a mere error in judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice, or partiality." *Simmons v. Simmons*, 723 A.2d 221, 222 (Pa. Super. 1998).

---

[6] According to Joan, the power of attorney executed by Mary on June 28, 2016, which named all three of her children as agents, was invalid. *See* Joan's Brief at 29. Based on our conclusions, *infra*, we need not make a determination regarding the validity of this document.

Instantly, the orphans' court reached the following conclusions.

> [T]he testimony that was developed at the hearing established that [Joan] had deferred the care of [Mary] to a caretaker even though the caretaker allegedly had not attended [Mary] as needed. The record further establishes that Joan had persisted in efforts to have [Mary] attend the event at the Peterson Center in contravention of the primary care physician's recommendations.[7] While it might be asserted that isolated incidents do not necessarily disqualify [Joan] from the role of guardian of the person, neither should they fail to be considered.

Orphans' Court Opinion, 9/5/2017, at 7.

On appeal, Joan asks us to reweigh the evidence considered by the orphans' court. Joan claims that after June of 2016, Patricia "denied Joan and her family the loving and supporting relationship they had shared for years." Joan's Brief at 30. Joan argues that "there was no direct, credible evidence presented by [Mary] or Patricia that Joan was disqualified from serving as guardian or that there was any cause to prevent her service." *Id*. at 31.

_____

[7] This incident was discussed in detail at the Emergency Hearing. Joan wished for Mary to attend the University of Pittsburgh graduation ceremony at the Peterson Events Center, as well as a family dinner, for Joan's son, Brian. Mary's physician suggested that Mary not attend the graduation due to concerns about being in a large crowd and also that she be accompanied by her caregiver for the family dinner. It was not clear whether Joan was willing to comply. The day before graduation, Joan and Brian went to see Mary, and they were denied entry to the house. Police were called. Brian took pictures of packed suitcases. Subsequently, Joan learned that Mary and David were staying at a different location with their caregiver. Joan filed an emergency petition to disclose Mary's location. At the Emergency Hearing, counsel for Mary informed the orphans' court that Mary and David were staying at a nearby hotel with their caregiver. Furthermore, counsel for both Mary and Patricia were aware of the location of Mary and David, and had agreed to the temporary move.

However, the evidence, as outlined above, which was deemed credible by the orphans' court, belies this conclusion.

We recognize that Joan disagrees with the conclusion of the orphans' court to appoint her sister, Patricia, as Mary's guardian. However, this disagreement does not demonstrate "the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice, or partiality." **Simmons**, 723 A.2d at 222. Thus, we conclude that Joan is not entitled to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2018