J-S11016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.C.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: W.D.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2708 EDA 2018 |

Appeal from the Decree Entered August 17, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): 51-FN-002329-2016,
CP-51-AP-0000096-2018

BEFORE: SHOGAN, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MURRAY, J.:                    **FILED APRIL 1, 2019**

W.D.B. (Father) appeals from the decree involuntarily terminating his parental rights to his minor child, J.C.B. (born May 2008) (Child), pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act.[1]

The trial court's statement of facts and procedural history is supported by the record. **See** Trial Court Opinion, 10/24/18, at 1-3 (internal citation to the record omitted); **see also** Petition for Involuntary Termination of Parental Rights, 6/28/18, Exhibit A.[2]

---

[1] K.B. (Mother) voluntarily relinquished her parental rights to Child, and the court terminated her rights by decree on August 17, 2018. Mother has not appealed.

[2] Father stipulated to the admission and contents of the statement of facts at the involuntary termination hearing. **See** N.T., 8/17/18, at 13-14, 20.

On September 23, 2016, Philadelphia Department of Human Services (DHS) social workers received a substantiated General Protective Services (GPS) report regarding the family. The report alleged that Mother and Father were not providing Child with adequate food, nutrition, medical, and dental care. The report also alleged that the home was infested with fleas and Child suffered from flea bites over his entire body; Mother had been diagnosed with anxiety, Father had been diagnosed with schizophrenia, and neither parent was receiving mental health treatment; and both parents were smoking marijuana.

On October 1, 2016, social workers attempted a home visit. Mother refused to allow anyone into the home. DHS received a court order to allow entry to the home. Prior to accessing the home, social workers learned that on November 10, 2016, Child's aunt, P.B. (Maternal Aunt) had entered the home and found it in a deplorable condition with trash, cat feces, and clutter throughout the home, and no bed for Child. Following Maternal Aunt's confrontation with Father, the Philadelphia Police Department was contacted, arrived at the home, and deemed it unsafe for Child. Child was placed in the care of Maternal Aunt.

On November 11, 2016, DHS social workers conducted a home visit. Although Father had attempted to clean the home, it was still trash-filled and did not have a bed for Child. Father admitted to being diagnosed with schizophrenia, for which he was not receiving treatment; Mother was hospitalized, diagnosed with anxiety and agoraphobia, and hoarded

possessions in the home. DHS implemented in-home services. During a follow up visit on November 22, 2016, Community Umbrella Agency (CUA) social workers observed cockroaches crawling throughout the home, stray cats in the home, clutter strewn throughout the home, and still no bed for Child. CUA social workers learned that Father had a history of arrests for behavioral misconduct, and that stay-away orders had been issued against Father regarding his youngest child, who lived in New Jersey with Father's wife, and there was domestic violence between Mother and Father. On December 6, 2016, DHS and CUA attempted to hold a case plan meeting. However, Father became agitated that Child had not been returned to his care, and left the meeting.

On February 6, 2017, Child was adjudicated dependent. On February 28, 2017, CUA held a Single Case Plan (SCP) meeting and the objectives identified for Father were to: (1) ensure that the home is cleaned and vermin free; (2) participate in mental health therapy and comply with therapy recommendations; and (3) participate in family functional therapy.

A permanency review hearing was held in March 2017; Child was to remain as committed and visitation was to be at Child's discretion. Father was to complete a parenting capacity evaluation (PCE). On April 3, 2017, Dr. Dana P. Reinhold, Ph.D., conducted a psychological exam of Father and made the following recommendations that: (1) Father receive individual psychotherapy; (2) comply with the recommendations of psychiatric treatment; and (3) receive a court-ordered PCE. On December 5, 2017, CUA

revised the SCP. The new objectives identified for Father were to: (1) participate in mental health treatment; (2) submit to a Behavioral Health System (BHS) assessment; (3) follow the recommendations of the BHS assessment; and (4) participate in a PCE.[3] As of December 2017, Father had not attended mental health treatment or completed a PCE.

On June 28, 2018, DHS filed a petition to terminate Father's parental rights. The court held a hearing on the petition on August 17, 2018.[4]

Vicki Paulino, CUA case manager, testified that she has been the case manager for approximately a year and, in that time, SCP objectives were conveyed to Father. *See* N.T., 8/17/18, at 6-11. Following a court-ordered psychological evaluation, the SCP objectives were that Father attend psychotherapy, complete a psychiatric evaluation with medication, and complete a parenting capacity evaluation. *Id.* at 11-12. However, Father informed Ms. Paulino that he did not need therapy. *Id.* at 12. Father did not participate in a psychiatric evaluation or complete a parenting capacity evaluation. *Id.* He has never been fully compliant with his objectives. *Id.* at 15.

_____

[3] At some time prior to this meeting, Father had posted on the internet a "prayer" seeking divine guidance and approval to murder various persons involved in the case, including DHS workers, judges, court officers, counsel, and Maternal Aunt. Stay-away orders were issued and the posting was entered into evidence at the termination hearing.

[4] Child was represented by Megan Helfrich, Esquire, as guardian *ad litem* and by Craig Sokolow, Esquire, as legal counsel. Accordingly, the requirement that child have legal counsel at a contested termination hearing was met. *See In re L.B.M.*, 161 A.3d 172 (Pa. 2017).

Child resides with Maternal Aunt, and at the time of the hearing, had been in care for eighteen months. *Id.* at 6. Child's needs are met by his Maternal Aunt, and he wishes to be adopted by her. *Id.* at 7, 14-16. Since August 2017, Child has not seen Father; visits were ordered at Child's discretion and Child did not wish to visit. *Id.* at 16-17. Child informed Ms. Paulino that he is afraid to visit with Father, as Father used to hit him, and did not feed him. *Id.* at 17. Ms. Paulino testified that Child does not have a healthy bond with Father; that he does not view Father as a parental figure; that Child would not be irreparably harmed by the termination of Father's parental rights; and that Child would be harmed by removal from Maternal Aunt's home. *Id.* at 17-18. Child has a very positive bond with Maternal Aunt and consistently tells Ms. Paulino he wishes to be adopted by Maternal Aunt. *Id.* at 18. Father has not attempted to contact Child since the case began. *Id.* at 19.

Father did not testify. During the termination hearing, Father left the courtroom during Ms. Paulino's testimony. *Id.* at 13. Father's counsel conveyed that Father did not wish to participate in the hearing for religious and constitutional reasons, and that Father did not recognize the legitimacy of the court. *Id.* at 13. After being advised of the consequences of his actions, Father chose to leave. *Id.* at 13. Counsel stipulated that the CUA social worker would testify consistently with DHS's statement of facts as submitted in the termination petition, and that Erica Williams, Psy.D., a psychologist who

had prepared a parenting capacity evaluation of Father in August 2018, would testify consistent with her report. *Id.* at 13-14, 20.

At the conclusion of testimony, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b). Father timely appealed and filed a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[5]

On appeal, Father raises the following issues:

A. Whether the trial court committed reversible error when it involuntarily terminated [F]ather's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act[,] 23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), and (a)(8)?

B. Whether the trial court committed reversible error when it involuntarily terminated Father's parental rights without giving primary consideration to the effect that the termination would have on the developmental[,] physical[,] and emotional needs of the child as required by the Adoption Act[,] 23 Pa.C.S.A. § 2511(b)?

C. Whether the trial court erred and abused its discretion when it changed the goal to adoption because the goal of adoption was not in the best interest of the child?

*See* Father's Brief at 3-4 (answers and unnecessary capitalization omitted).

_____

[5] Father filed his notice of appeal and Pa.R.A.P. 1925(b) statement of errors complained of on appeal *pro se*. On November 16, 2018, this Court remanded the matter to the trial court to determine whether counsel had abandoned Father. On December 3, 2018, the trial court determined that counsel had abandoned Father, and appointed new counsel, who filed an amended statement of errors complained of on appeal on December 14, 2018. This statement of errors raised two issues challenging the trial court's findings under Section 2511(a), and challenging the trial court's Section 2511(b) determinations. *See* Pa.R.A.P. 1925(b), 12/14/18, at 1.

Initially, we must determine whether Father has preserved all of his issues for our review. Where an appellant does not preserve his issue by raising it in his concise statement of errors complained of on appeal, that issue is waived on appeal. *See Krebs v. United Refining Co. of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006). In his brief, Father purports to challenge both the termination of his parental rights and the permanency goal change. *See* Father's Brief at 3-4. However, Father did not preserve his challenge to the goal change in his statement of errors complained of on appeal. Accordingly, he has waived this issue for purposes of appeal. *Krebs*, 893 A.2d at 797.[6]

We review cases involving the termination of parental rights according to the following:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate

---

[6] We additionally note that our Court has reiterated that *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018) (filed June 1, 2018), requiring the quashal of appeals due to the failure to file separate notices of appeal or separate dockets, will be applied prospectively and uniformly by this Court. *See Matter of M.P.*, --- A.3d ---, 2019 Pa. Super. 55 (Pa. Super. 2019). In involuntary termination cases where a parent wishes to challenge both the termination and the goal change, and where separate dockets exist for the adoption and dependency matters, the proper procedure is to file a separate notice of appeal from each docket. *Id.* at * 2. Father, whose notice of appeal was filed in September 2018, filed a notice of appeal solely from the termination docket. However, because Father initially filed *pro se*, and because Father first challenged the goal change in his brief, we decline to quash pursuant to *Walker* and *M.P.* Nevertheless, we reiterate that proper appellate procedure should be followed. *Id.* at * 2.

courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations omitted).

Termination requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Instantly, we focus our analysis on subsection (a)(2) and (b). The relevant subsections of 23 Pa.C.S.A. § 2511 provide:

> **(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and

> causes of the incapacity, abuse, neglect or refusal cannot or
> will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.**--The court in terminating the rights
> of a parent shall give primary consideration to the developmental,
> physical and emotional needs and welfare of the child.  The rights
> of a parent shall not be terminated solely on the basis of
> environmental factors such as inadequate housing, furnishings,
> income, clothing and medical care if found to be beyond the
> control of the parent.  With respect to any petition filed pursuant
> to subsection (a)(1), (6) or (8), the court shall not consider any
> efforts by the parent to remedy the conditions described therein
> which are first initiated subsequent to the giving of notice of the
> filing of the petition.

23 Pa.C.S.A. § 2511.

To satisfy the requirements of Section § 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***See In Interest of Lilley***, 719 A.2d 327, 330 (Pa. Super. 1998).  The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied.  ***In re Z.P.***, 994 A.2d 1108, 1117 (Pa. Super. 2010).  Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties.  ***Id.***

Father argues that there was not clear and convincing evidence to support the termination of his parental rights under 23 Pa.C.S.A. § 2511(a)(2) because he attempted to comply with his objectives by attending an SCP

meeting and a court-ordered psychological evaluation.[7]  *See* Father's Brief at 6-7.  Father claims that DHS failed to prove that he could not remedy the conditions that led to Child's removal from Father's care.  *Id.*

Father's argument is belied by the record.  The evidence introduced at the August 17, 2018 hearing showed that, as of the date of termination, Father had not seen Child since August 2017, and was not amenable to completing his objectives.  Father's mental health was the major contributing factor leading to his inability to parent Child, and the record indicated that Father refused to attend therapy or consider medication.  Indeed, the notes of testimony from the termination hearing indicate that Father refuses to recognize the authority of the court and refuses to cooperate with recommendations.  Although Father did complete one psychological evaluation, the record reflects that from the inception of this case, he has never been fully compliant with his objectives and remains noncompliant due to his failure to complete a psychiatric evaluation, parenting capacity

_____

[7] Father also argues, citing notes of testimony from a February 1, 2017, hearing, that he "has demonstrated his commitment to maintain [*sic*] close to his children because he had a good relationship with his children."  *See* Father's Brief at 7.  The February 1, 2017, transcript is not included in the certified record and Father has not sought to supplement the record, although the responsibility for ensuring that the transmitted record is complete rests solely upon an appellant.  *See* Pa.R.A.P. 1921 (delineating contents of record on appeal); Pa.R.A.P. 1931 (noting appellant's responsibility to ensure a complete record on appeal); *see also **Commonwealth v. Preston***, 904 A.2d 1, 7-8 (Pa. Super. 2006) (an appellate court may only consider facts in the certified record, and it is not the court's responsibility to obtain transcripts).  Accordingly, we will not consider any argument related to evidence introduced at the February 1, 2017 hearing.

evaluation, and attend mental health treatment of any sort prior to the filing of the petition to terminate his parental rights. Additionally, and as noted above, Father has not attempted to contact Child since the beginning of the case.

Consistent with the foregoing, we discern no error in the trial court's finding that competent, clear and convincing evidence supported the termination of Father's parental rights pursuant to Section 2511(a)(2), based upon Father's continued incapacity – namely, his refusal to obtain treatment for his mental health issues – that resulted in Child being without essential parental care, the cause of which "cannot or will not be remedied." *See Lilley*, 719 A.2d at 330; *Z.P.*, 994 A.2d at 1117.

Next, we consider whether Child's needs and welfare will be met by termination pursuant to Subsection (b). *See Z.P.*, 994 A.2d at 1121. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.* The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. *Id.* Ultimately, the concern is the needs and welfare of a child. *Id.*

We have stated:

[b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of the relationships is also important to a child, for whom severance of close parental

- 11 -

ties is usually extremely painful. The trial court, in considering what situation would best serve the child's needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

*Z.P.*, 994 A.2d at 1121 (quoting *In re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000)). The trial court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists. *Id.* "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

Father argues that the trial court failed to properly consider his bond with Child, and that DHS did not present any evidence that addressed Child's bond with Father. *See* Father's Brief at 8. In support, Father references his efforts to comply with the court's orders by attending a psychological evaluation and single case plan meeting to "make himself a better parent." *Id.* at 9-10.

Father's argument is not supported by the record. Contrary to Father's assertions, DHS presented evidence to show that no beneficial relationship existed between Father and Child. Specifically, the CUA case manager, Ms.

Paulino, testified that there is no healthy bond between Father and Child. Child does not want to visit with Father because Child is afraid of him due to Father's past physical abuse and neglect. Ms. Paulino opined that Child would not be harmed by the termination of Father's parental rights. She further testified that Child has a positive bond with Maternal Aunt, has consistently relayed that he wishes to be adopted by Maternal Aunt, and would be harmed by removal from Maternal Aunt's care. We discern no abuse of discretion in the trial court's conclusion that Child's needs and welfare are best served by termination.

In sum, clear and convincing evidence supports the trial court's termination of Father's parental rights under Sections 2511(a)(2), as well as the Section 2511(b) findings that there was no beneficial bond between Father and Child, such that adoption would best serve Child's needs and welfare. *See Z.P.*, 994 A.2d at 1126-27; *K.Z.S.*, 946 A.2d at 763.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/1/19