J-A13029-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                :            PENNSYLVANIA
                :
         v.            :
                :
                :
FELIX RAMOS            :
                :
       Appellant    :    No. 3634 EDA 2018

Appeal from the Judgment of Sentence Entered November 29, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006110-2016

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:          **FILED MAY 22, 2020**

Felix Ramos appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after a jury found him guilty of indecent assault[1] and aggravated indecent assault.[2]  On appeal, Ramos asserts that the trial court erred in denying his pre-trial motion filed pursuant to Pa.R.Crim.P. 600.  Upon careful review, we concur with Ramos and are constrained to vacate his judgment of sentence.

This case stems from an incident that occurred in the back of a Wawa parking lot at 9400 State Road in Philadelphia.  The victim was walking into the Wawa when she struck up a conversation with Ramos, during which Ramos

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3126.

[2] 18 Pa.C.S.A. § 3125.

offered to obtain methamphetamine for her. N.T. Trial, 5/22/18, at 47-49. Upon exiting the Wawa, the victim again encountered Ramos, who indicated he was in possession of the drugs. *Id.* at 49. The victim walked with Ramos across the Wawa parking lot to a wooded area. *Id.* at 50. There, Ramos grabbed the victim and pulled her into an encampment, where the victim assumed Ramos was living. *Id.* at 51. Ramos reached for the victim's breasts and tried several times to kiss her. *Id.* at 52-53. The victim told Ramos to stop and that, if she had to have sex with him in order to obtain the drugs, she "[didn't] need to get high like this." *Id.* at 51.

Ramos would not let the victim leave and reached under her dress, touched and licked her breasts, touched her vagina, and had the victim touch his penis with her hand. *Id.* at 58, 59, 70-71. Finally, the victim indicated that she would have sex with Ramos if he went to Wawa and got a condom. When Ramos left to do so, the victim fled and sought help. *Id.* at 61-64.

Police were called and the victim gave them a description of Ramos. *Id.* at 66. After a radio flash was broadcast, Ramos was apprehended a few blocks away. *Id.* at 31-32. The victim identified him as her assailant. *Id.* at 66. DNA swabs taken from the victim's breasts contained DNA consistent with that of Ramos. N.T. Trial, 5/23/18, at 28, 33.

Ramos was charged with aggravated indecent assault, indecent assault, and simple assault. Trial commenced on May 21, 2018; prior to this, the court heard argument on, and denied, Ramos' Rule 600 motion to dismiss. On May 23, 2018, a jury convicted Ramos of all charges except simple assault. On

November 29, 2018, the trial court sentenced Ramos to an aggregate term of 3½ to 7 years' incarceration, followed by 2 years of probation. Ramos filed a timely appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Ramos challenges the court's denial of his Rule 600 motion. Our standard of review of a Rule 600 determination is whether the trial court abused its discretion. *Commonwealth v. Solano*, 906 A.2d 1180, 1186 (Pa. 2006). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will . . . discretion is abused." *Commonwealth v. Wright*, 961 A.2d 119, 142 (Pa. 2008) (citations omitted). "Our scope of review is limited to the record evidence from the speedy trial hearing and the findings of the lower court, reviewed in the light most favorable to the prevailing party"—here, the Commonwealth. *Solano*, 906 A.2d at 1186.

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

*Commonwealth v. Bethea*, 185 A.3d 364, 370 (Pa. Super. 2018).

Rule 600 provides, in relevant part, as follows:

(A) Commencement of Trial; Time for Trial

> (1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.

> (2) Trial shall commence within the following time periods.

> > (a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

* * *

(C) Computation of Time

> (1) For purposes of paragraph (A), *periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence*. Any other periods of delay shall be excluded from the computation.

* * *

(D) Remedies

> (1) When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney . . . may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa.R.Crim.P. 600 (emphasis added).

To establish whether there has been a Rule 600 violation under paragraph (A), a court must determine whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence. **Id.**, comment, citing **Commonwealth v. Dixon**, 907 A.2d 468 (Pa. 2006) and **Commonwealth v. Matis**, 710 A.2d 12 (Pa. 1998). "[D]ue

- 4 -

diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." ***Commonwealth v. Bradford***, 46 A.3d 693, 701–02 (Pa. 2012).

Periods of judicial delay—i.e., delay attributable to crowded trial dockets or the unavailability of the court—are excludable from calculations under the rule. ***Id.*** at 705. Trial courts must apply judgment in distinguishing between delay attributable to the court and that which should be allocated to a party. ***Commonwealth v. Mills***, 162 A.3d 323, 325 (Pa. 2017).

Our review of the record provides the following timeline of this matter. The complaint was filed against Ramos on June 7, 2016. ***See*** Criminal Complaint, 6/7/16. A preliminary hearing was held on June 23, 2016, at which time Ramos was held for court. ***See*** Criminal Docket Entry 5. On August 16, 2016, a scheduling conference was held, at which time Ramos was given the earliest possible trial date of June 12, 2017. ***See*** Criminal Docket Entry 31. On the date scheduled for trial, upon joint request of the parties, trial was continued until June 13, 2017 to enable defense counsel to review four DVDs containing 30 hours of security camera footage, which the Commonwealth had just turned over to the defense. ***See*** Criminal Docket Entry 40; N.T. Rule 600 Hearing, 5/21/18, at 4-5, 8. On June 13, 2017, the defense requested a continuance to further investigate the surveillance footage. ***See*** Criminal Docket Entry 48. Trial was scheduled for the next available date, January 16, 2018. ***See id.*** On that date, the defense again requested a continuance, this

time to investigate recently-turned-over DNA evidence.  *See* Criminal Docket Entry 60; N.T. Rule 600 Hearing, 5/21/18, at 6, 8-9.  Trial commenced on May 21, 2018, 713 days after the complaint was filed.

The trial court found the following time excludable:  (1) the 300 days that elapsed between the August 16, 2016 scheduling conference and the first available trial date of June 12, 2017, attributable to judicial delay; (2) the one-day delay from June 12 to June 13, 2017 resulting from the joint request for continuance to review video evidence; (3) 217 days from June 13, 2017 to January 16, 2018 resulting from the defense request for continuance to further review video evidence;[3] and (4) the 125 days between January 16, 2018 and May 21, 2018 resulting from another defense request for a continuance to review DNA evidence.  *See* Trial Court Opinion, 6/4/19, at 7-8.

At issue here are periods (1), (3) and (4) listed above.[4]  As to the first period—August 16, 2016 to June 12, 2017—Ramos argues that the time is not excludable as judicial delay because, pursuant to **Mills**, **supra**, delay attributable to the "normal progression of the case" does not constitute

---

[3] The trial court's calculation excluded 213 days, from June 13, 2017 to January 12, 2018.  However, trial was actually scheduled to begin on January 16, 2018.  *See* Criminal Docket, at 48.  January 12, 2018 was the date on which a pre-trial conference was scheduled.  *See id.*

[4] The parties do not dispute that the 70-day period between the filing of the complaint on June 7, 2016 and the scheduling conference held on August 16, 2016 is included in the Rule 600 calculation as attributable to the "normal progression of the case."  **Mills**, 162 A.3d at 325.

excludable delay unless the Commonwealth is "trial ready." Brief of Appellant, at 8. Because Ramos claims the Commonwealth was not "trial ready" throughout the pendency of the case, judicial delay cannot serve to exempt the Commonwealth from its obligations under Rule 600. *See* Brief of Appellant, at 9.

The Commonwealth counters that the trial court properly exercised the discretion "explicitly permitted" by *Mills* in excluding this time as judicial delay. Brief of Appellee, at 13. The Commonwealth asserts that it was, in fact, prepared to proceed to trial, and the sole reason for the delay was congestion in the court's schedule. *Id.* at 14. The Commonwealth argues that, if the time between the scheduling conference and the first trial date were not excludable as judicial delay,

> then [Ramos] could never be tried at all, under any circumstances. More than the allotted 365 days . . . would have passed from the filing of the complaint to the first possible date for trial without the Commonwealth having postponed a single listing. Under [Ramos'] interpretation, Rule 600 would have been violated and all charges would have to be dismissed, even though there had been no delays attributable to the Commonwealth.

Brief of Appellee, at 16.

We agree with the Commonwealth that this time was properly excluded from the Rule 600 calculation as attributable to judicial delay. The docket indicates that Ramos was given the earliest possible trial date at the August 16, 2016 scheduling conference. This delay was not requested by the Commonwealth and was entirely beyond the control of the Commonwealth.

Further, there is nothing in the record to indicate that, at this point in the proceedings, the Commonwealth had failed to exercise due diligence. **See Mills**, **supra**. The court listed the case for the very first available date allowed by its schedule and, as such, the intervening period is excusable as judicial delay.

Ramos argues that the second period of delay—from June 13, 2017 to January 16, 2018—should have been charged to the Commonwealth because it presented no evidence as to "when the assigned detective obtained the videos or what efforts he undertook to do so." Brief of Appellant, at 10. At the Rule 600 motion hearing, counsel argued that the video evidence had been "requested over and over and over again" since "day one at the bar of the court." N.T. Rule 600 Hearing, 5/21/18, at 5. Ramos argues that the Commonwealth's "unsupported hearsay assertion that [the detective] '[w]as making ongoing efforts' does not satisfy its due diligence obligation under Rule 600." **Id.** at 10-11. Ramos argues that "delay caused by a representative of the Commonwealth must be charged against the Commonwealth." **Id.** at 12, citing **Commonwealth v. Minnich**, 471 A.2d 869 (Pa. Super. 1984) (laboratory analyst was representative of Commonwealth; therefore, delay attributable to his faulty analysis chargeable to prosecution). Ramos highlights a statement from the prosecutor at the Rule 600 Hearing, acknowledging that the video "had been passed late" due to a "misunderstanding" and that the delay "can be imputed to the

Commonwealth, obviously, because it's in the possession of police." N.T. Rule 600 Hearing, 5/21/18, at 8.

In response, the Commonwealth argues that it was "not at fault for the detective failing to provide notice of the video evidence sooner, and was willing to forego it and proceed to trial[.]" Brief of Appellee, at 20. Because the video evidence was produced "at the first opportunity to do so," and the existence of the evidence was, in fact, "a surprise to the prosecutor," the Commonwealth argues it was duly diligent and the time was properly excluded. *Id.* at 21.

In concluding that this time was attributable to the defense, the trial court stated that it "accepted the Commonwealth's explanation that there was nothing in [its] paperwork regarding video recordings and that they were handed over at the first opportunity to do so." Trial Court Opinion, 6/4/19, at 7-8. The court's cursory analysis, however, fails to address whether the Commonwealth acted with due diligence in obtaining the video evidence in the first instance.

The incident in question occurred on June 6, 2016. The police investigation report, dated June 11, 2016, indicates that the assigned investigating officer contacted Wawa to determine whether surveillance video existed. Accordingly, the Commonwealth was aware of the possibility that such evidence existed as of early June 2016. Defense counsel made numerous requests for the video evidence. *See* N.T. Rule 600 Hearing, 5/21/18, at 5 ("[The video evidence] was requested over and over and over again."). Yet

the Commonwealth presented no evidence that it ever contacted the investigating officer to request the video recordings or to inquire as to the status of his inquiry. In a Rule 600 proceeding, it is the Commonwealth's burden to demonstrate, by a preponderance of the evidence, that it put forth "reasonable effort." *Commonwealth v. Selenski*, 994 A.2d 1083, 1089 (Pa. 2010).

In *Commonwealth v. Taylor*, 598 A.2d 1000 (Pa. Super. 1991), we held that a defense continuance, requested in order to conduct an investigation based on newly-received discovery, was properly charged to the Commonwealth where the Commonwealth failed to act with due diligence in obtaining the discovery materials from police. There, the Commonwealth made two follow-up requests to the police over a period of slightly more than two months. In reversing the trial court's finding of due diligence, we stated that "[s]urely, the Commonwealth could have done more in its attempt to secure the report from the police than merely requesting the report two or three times." *Id*. at 1002. We concluded that the failure to do more amounted to a lack of due diligence. *Id. See also Commonwealth v. Preston*, 904 A.2d 1, 12 (Pa. Super. 2006) ("[I]f the delay in providing discovery is due to either intentional or negligent acts, *or merely stems from the prosecutor's inaction*, the Commonwealth cannot claim that its default was 'excusable.'") (emphasis added).

Similarly, here, we do not find the Commonwealth's efforts—or lack thereof—to obtain the video evidence to have been reasonable based on the

record before us. More than one year passed between the date the investigating officer requested the video surveillance evidence from Wawa and the date the video evidence was passed to the defense. In that time, the prosecution apparently made no efforts to ascertain the status of that request; nor did the Commonwealth provide an explanation for the failure of the police to act more diligently in obtaining the video. Accordingly, when, on the day of trial, the assigned detective walked into the courtroom with four DVDs containing 30 hours of video recording, it was unreasonable to expect defense counsel to properly review and digest the evidence in the amount of time provided by a day's continuance—which, practically speaking, would have been a time period of far less than 24 hours in which to review 30 hours of video. When defense counsel—who was otherwise prepared to proceed to trial—was compelled to ask for additional time to review the video, it was as a direct result of the Commonwealth's lack of due diligence in obtaining the evidence and providing it to the defense. As such, the trial court improperly excluded the ensuing 217-day delay from its Rule 600 calculation.

We now turn our attention to the third disputed time period—between January 16, 2018 and May 21, 2018—caused by the production of DNA evidence within days of the second trial date. Ramos asserts that the Commonwealth failed to demonstrate that it acted with due diligence in obtaining and handing over the DNA evidence. Ramos points out that, although he was swabbed for DNA testing in May of 2017, the results were not handed over to the defense until just before the January 16, 2018 trial

date. Ramos avers that the Commonwealth provided no explanation for this "inordinately lengthy delay." Brief of Appellant, at 14. Although the Commonwealth argues that the delay is attributable to Ramos because he failed to respond to its requests to appear to be swabbed, Ramos claims that the Commonwealth made no attempt to obtain a DNA swab from him during the eight months he was in custody, from June 7, 2016 to February 3, 2017. *Id.* Ramos further alleges the Commonwealth's lack of due diligence in obtaining the swab "was compounded by its failure, once it had a sample, to hand over the DNA report to defense counsel until eight months later[,] on the eve of the second scheduled trial date." *Id.* at 14-15. Thus, as with the video evidence, Ramos argues that the time attributable to his continuance request to investigate the DNA evidence should be charged to the Commonwealth.

The Commonwealth argues that the delay was properly excluded because "[t]he trial court determined that 'the delay in getting a specimen of DNA to test from [Ramos] was the fault of the defense.'" Brief of Appellee, at 24, quoting Trial Court Opinion, 6/4/19, at 8. The Commonwealth argued that "there were concerted efforts made to obtain a DNA swab from [Ramos], who was either reluctant to be swabbed or difficult to locate, and the swab was not obtained until May 26, 2017[.]" *Id.* The Commonwealth further asserts that "the delay was caused by [Ramos'] perceived need[]" to determine if a DNA expert would be required, despite defense counsel having agreed to forego DNA evidence at the time of the first trial listing. *Id.* As such, the

Commonwealth argues that the time was properly excluded as a defense continuance.

Once again, we find the court's summary conclusion that "the delay in getting a specimen of DNA to test from [Ramos] was the fault of the defense," Trial Court Opinion, 6/4/19, at 8, to be unsupported by the record and utterly lacking in the necessary inquiry into the Commonwealth's exercise of due diligence. Notably, the court failed to acknowledge that the Commonwealth had nearly eight months—from the date Ramos was arrested on June 6, 2016 until his release on bail on February 3, 2017—to obtain a buccal swab from him while he was in custody. The Commonwealth presented no evidence as to any efforts to obtain a swab during that period; nor does the Commonwealth provide an explanation for the 7½ month delay between the time the swab was obtained and the date the results were finally turned over to the defense on the eve of the second trial date. The Commonwealth attempts to shift blame for the delay to Ramos, arguing that he "was either reluctant to be swabbed or difficult to locate[.]" Brief of Appellee, at 24. However, the Commonwealth first requested a swab in April 2017. *See* N.T. Rule 600 Hearing, 5/21/18, at 6. Ramos provided a sample on May 26, 2017. Accordingly, even assuming Ramos actively avoided providing a sample, he was responsible for less than two months of delay—delay that could have been avoided had the Commonwealth exercised diligence by obtaining a sample while Ramos was in its custody for nearly eight months.

The Commonwealth also attempts to deflect responsibility for the delay to defense counsel's agreement at the first trial listing to forego DNA evidence. However, for reasons not evident from the record, and despite defense counsel's prior agreement, the Commonwealth chose to proceed with DNA testing. Having opted to go forward with DNA analysis, the Commonwealth was required to provide the results of the testing to the defense. ***See*** Pa.R.Crim.P. 573(B)(1)(e) (mandatory pretrial discovery rules require Commonwealth to disclose, *inter alia*, any results or reports of scientific tests within possession or control of prosecutor). When the Commonwealth—for the second time—produced key evidence on the very eve of trial, the defense was entitled to a reasonable period of time to review the evidence and investigate its options in response thereto. Accordingly, the ensuing delay was properly chargeable to the Commonwealth as a result of its delay in producing mandatory discovery. ***See Taylor***, ***supra***; ***Preston***, ***supra***.

We have determined that the trial court improperly excluded a total of 342 days from its Rule 600 calculation. Adding to that sum the 70 undisputed includable days between the filing of the complaint and the first scheduling conference brings the Rule 600 calculation to 412 days—47 days in excess of the 365-day period provided for in Rule 600. Accordingly, we are constrained to vacate Ramos' judgment of sentence and discharge him.[5]

_____

[5] We are cognizant of the dual purposes underpinning Rule 600—i.e., the protection of society, as well as of an accused's speedy trial rights. We do not

Judgment of sentence vacated; Appellant discharged. Jurisdiction relinquished.

Judgment Entered.

signature

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/22/20

---

take lightly the nullification of a duly entered jury verdict. However, where the Commonwealth's sustained lack of due diligence over the pendency of a relatively uncomplicated prosecution deprives a defendant of his right to a speedy trial under our rules of court, we are left with no choice but to vindicate that right, unfortunately at the expense of society's right to effective prosecution of criminal cases. The Commonwealth can and must do better.