J-A14030-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BRIAN W. MCVICKER | : | |
| | : | |
| Appellant | : | No. 1237 WDA 2020 |

Appeal from the Judgment of Sentence Entered November 3, 2020
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0000466-2019

BEFORE: MURRAY, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY KING, J.: **FILED: JUNE 21, 2021**

Appellant, Brian W. McVicker, appeals from the judgment of sentence entered in the Westmoreland County Court of Common Pleas, following his jury trial convictions for arson endangering persons, risking catastrophe, and criminal mischief.[1] We affirm.

In its opinion, the trial court set forth the relevant facts of this case as follows:

> [Appellant] occupied a house behind the Washington Furnace, a bar located in Laughlintown, Pennsylvania. Chad Granatire (hereinafter "Granatire"), the owner of the Washington Furnace, testified that [Appellant] was allowed to stay in the house behind the bar while he worked as a maintenance man and watched over the property for Granatire. Granatire listed the Washington Furnace and the surrounding property, including the house, for sale in November 2018. He informed [Appellant] of his intent to

---

[1] 18 Pa.C.S.A. §§ 3301(a)(1)(i), 3302(b), and 3304(a)(5), respectively.

sell the property and explained that his ability to stay on the property would be determined by the new owners.

On January 15, 2019, Michael Steele called 911 to report a structure fire he spotted from Route 30 on his drive home from work. As he drove closer to the fire to give the operator a location, a man approached him and said he set the fire because people inside the building were trying to kill him. At trial, Mr. Steele could not identify [Appellant] as the man he spoke to.

[Appellant's] neighbor, Walter Miller (hereinafter "Miller"), testified that on the same evening, [Appellant] came to his house with a fire extinguisher and sprayed the extinguisher inside his house. Miller recalled [Appellant] explaining that he was saving him.

In response to the 911 call, Officer Shawn Knepper of the Ligonier Valley Police Department arrived on scene. Officer Knepper testified that [Appellant] was at the scene when he arrived and was holding a lighter and rambling. [Appellant] eventually stated that he lit the house on fire with a can of Crisco to get the SWAT team there. Officer Knepper also recalled that [Appellant] said three squatters were located in the basement of the residence. Officer Knepper placed [Appellant] in his patrol car and, upon searching [Appellant's] person, found a container in his sweatshirt pocket containing suspected crystalized methamphetamine. The substance was never confirmed as methamphetamine because the police department later misplaced it.

Patrick Kromel, the Assistant Fire Chief for Ligonier Township Fire Department, arrived to the house at 11:46 p.m. Assistant Chief Kromel testified that, after conducting an inspection from the outside of the structure, four firefighters entered the front door with a hose and thermal camera to fight the fire from the inside but determined that it was unsafe to proceed any further inside the structure and exited the house.

Trooper Carl Richards, a Deputy Fire Marshall with the Pennsylvania State Police, testified as an expert witness in the field of origin and cause of fires. Trooper Richards physically examined the structure and fire to make a

determination about its origin. This investigation included speaking with [Appellant] who indicated three men were chasing him so he smeared Crisco on the walls and started the fire. Trooper Richards concluded the cause of the fire was the introduction of an open flame to the available combustibles inside the house to the left of the entrance.

After the fire was extinguished and the physical investigation of the structure was finalized, Officer Knepper filed arson charges against [Appellant].

(Trial Court Opinion, filed December 14, 2020, at 2-3) (internal citations to the record and quotation marks omitted).

Following trial, a jury convicted Appellant of arson, risking catastrophe, and criminal mischief. On November 3, 2020, the court sentenced Appellant to an aggregate term of 2-4 years' imprisonment and restitution in the amount of $125,000.00. Appellant did not file post-sentence motions.[2] Appellant timely filed a notice of appeal on November 10, 2020. On November 16, 2020, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on November 24, 2020.

Appellant raises the following issues for our review:

Whether the court erred in determining there was sufficient evidence to find [Appellant] guilty of intentionally starting a

_____

[2] Despite having counsel of record, Appellant filed a *pro se* motion to modify sentence on November 20, 2020. The record indicates that the court forwarded the *pro se* filing to counsel of record. **See** Pa.R.Crim.P. 576(A)(4) (stating in any case in which defendant is represented by attorney, if defendant submits written motion that has not been signed by defendant's attorney, clerk of courts shall accept it for filing and forward copy of time-stamped document to counsel within ten days of receipt).

fire placing another person, namely firefighters, in danger of death or bodily injury?

Whether the court had sufficient evidence supported by the record to set the amount of restitution ordered?

(Appellant's Brief at 4).

In his first issue, Appellant argues that his actions did not place the firefighters in danger of death or bodily injury. Although the firefighters briefly crossed the threshold of the door to the burning building, Appellant insists they immediately retreated after determining that it was unsafe to continue any further. Under these circumstances, Appellant concludes the Commonwealth presented insufficient evidence to support the arson conviction. We disagree.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the

[trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jackson*, 215 A.3d 972, 980 (Pa.Super. 2019) (quoting

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal*

*denied*, 613 Pa. 642, 32 A.3d 1275 (2011)).

The Pennsylvania Crimes Code defines the offense of arson, in relevant part, as follows:

**§ 3301. Arson and related offenses**

**(a) Arson endangering persons.—**

(1)    A person commits a felony of the first degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and if:

(i)    he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire[.]

18 Pa.C.S.A § 3301(a)(1)(i). Additionally:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3).

"[T]he act of setting fire to an inhabited building is one inherently dangerous to persons, whether it be the inhabitants of the structure or the firefighters charged with extinguishing the fire. Thus, whatever protection 18 Pa.C.S.A. § 3301(a) affords, protection of property is only incidental to the statute's greater interest in protecting human life from the perils of fire." **Commonwealth v. Lopez**, 663 A.2d 746, 749 n.1 (Pa.Super. 1995). **See also Commonwealth v. Bragg**, 133 A.3d 328 (Pa.Super. 2016), *affirmed*, 642 Pa. 13, 169 A.3d 1024 (2017) (holding sufficient evidence demonstrated that defendant placed another person in danger of death or bodily injury; defendant threw his clothes on residential driveway, poured gasoline onto clothing, and ignited fire with a lighter; assistant fire marshal testified that fire could have easily spread throughout scorched vegetation in neighborhood yard, placing nearby homes in danger).

Instantly, Assistant Chief Kromel testified that four firefighters crossed the threshold of the front door while the structure was actively burning. (**See** N.T. Trial, 8/6/20, at 83-86). The firefighters entered the structure "to make a determination … if it's safe to proceed" to fight the fire from inside the structure. (**Id.** at 90). The firefighters realized the "floor of the structure was no longer safe," and they exited to conduct "an exterior attack." (**Id.** at 83). By the time firefighters ceased their efforts, "the floor and everything was too unstable, and it was still large amounts of fire." (**Id.** at 87). Ultimately, Chief Kromel "called an excavating company in to knock the walls down … so [the

fire] wouldn't spread and get into the woods or any other close structures." (***Id.*** at 87).

Although the firefighters did not remain inside the burning structure for an extended period, Assistant Chief Kromel's testimony confirmed that the firefighters were in danger while battling the blaze. Thus, sufficient evidence demonstrated that Appellant recklessly placed firefighters in danger of death or bodily injury. ***See Bragg, supra***; ***Lopez, supra***. ***See also Commonwealth v. Dykes***, 541 A.2d 1 (Pa.Super. 1988), *appeal denied*, 520 Pa. 602, 553 A.2d 965 (1988) (stating sufficient evidence supported defendant's arson conviction where he intentionally set fire that endangered firefighters, despite argument that all fires set in populated areas eventually endanger firefighters).

In his second issue, Appellant claims that the court subtracted the 2019 sale price of the victim's fire-damaged property ($299,000.00) from a 2014 appraisal price ($424,000.00) to set the restitution amount at $125,000.00. Appellant insists, however, that the 2019 sale price actually represents two discrete transactions: the sale of real estate for $139,000.00, and the sale of other assets, including bar equipment and a liquor license, for $160,000.00. Appellant maintains the court should not have used these figures to determine the amount of restitution, where they do not accurately reflect the lost value of the structure that was destroyed in the fire. Appellant concludes that the record does not support the amount of restitution ordered by the court. As

presented, Appellant's challenge implicates the discretionary aspects of sentencing. **See Commonwealth v. Weir**, ___ Pa. ___, 239 A.3d 25 (2020) (explaining that argument that restitution amount was not supported by record implicates discretionary aspects of sentencing).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa.Super. 2000). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). "[I]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." **Commonwealth v. Cartrette**, 83 A.3d 1030, 1042 (Pa.Super. 2013) (*en banc*).

Instantly, Appellant did not file a post-sentence motion preserving his issue in the trial court. Although Appellant attempted to file a *pro se* post-

sentence motion, this filing was a legal nullity.[3]  ***See Commonwealth v. Nischan***, 928 A.2d 349, 355 (Pa.Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007) (reiterating defendants have no right to file *pro se* motions while represented by counsel; *pro se* post-sentence motions filed by represented defendants are nullities, having no legal effect).   Further, Appellant's brief fails to set forth a separate concise statement demonstrating that there is a substantial question, pursuant to Rule 2119(f).   Thus, Appellant's second issue is waived.  ***See Cartrette, supra***; ***Evans, supra***. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/21/2021

---

[3] To the extent Appellant could have preserved his claim by raising it at the sentencing hearing, the certified record on appeal does not include a copy of the sentencing transcript.  In the absence of a complete certified record, there is no basis upon which this Court can determine that Appellant preserved his claim at the sentencing hearing. ***See Commonwealth v. Preston***, 904 A.2d 1, 7 (Pa.Super. 2006) (explaining appellant bears responsibility for ensuring that record certified on appeal contains all materials necessary for reviewing court to perform its duty; any claims that cannot be resolved in absence of necessary transcript must be deemed waived for purpose of appellate review).