J-S10003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES ALFONSO MILLER, JR. | : | |
| | : | |
| Appellant | : | No. 816 WDA 2023 |

Appeal from the Judgment of Sentence Entered December 29, 2021
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0003438-2019

BEFORE:  OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY OLSON, J.:                     **FILED: May 7, 2024**

Appellant, James Alfonso Miller, Jr., appeals from the judgment of sentence entered on December 29, 2021, following his jury trial convictions for:  arson – danger of death or bodily injury; arson endangering property – reckless endangerment of inhabited building; recklessly endangering another person; institutional vandalism; criminal mischief – damage to property; and, dangerous burning.[1]  Counsel for Appellant has filed an ***Anders***[2] brief and petition to withdraw as counsel.  We affirm the judgment of sentence and grant the petition to withdraw.

---

[1]  18 Pa.C.S.A. §§ 3301(a)(1)(i), 3301(c)(2), 2705, 3307(a)(3), 3304(a)(1), 3301(d.1), respectively.

[2]  ***Anders v. California***, 386 U.S. 738 (1967); ***see also Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009); ***Commonwealth v. McClendon***, 434 A.2d 1185 (Pa. 1981).

We briefly summarize the facts and procedural history of this case, as gleaned from the certified record, as follows. On January 16, 2020, the Commonwealth filed a criminal information against Appellant, a prison inmate at the time, alleging that:

> [On] September 8, 2019, [...Appellant] did intentionally start a fire and/or cause an explosion [...] and did thereby recklessly place another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire [...] intentionally start[ed] within his [prison] cell, occurring at [State Correctional Institute (SCI)] Albion [and] thereby [Appellant] did commit the crime of arson and related offenses.

Criminal Information, 1/16/2020, at *1 (superfluous capitalization omitted).[3] A jury found Appellant guilty of the aforementioned charges following a three-day jury trial commencing on September 16, 2021. On December 29, 2021, the trial court sentenced Appellant to an aggregate term of 72 months to 144 months of imprisonment, followed by one year of probation. This appeal resulted.[4]

---

[3] The Commonwealth also alleged that Appellant "did throw punches and/or kicked his legs as [correction officers] attempted to escort him out of his cell[, Appellant] attempted to launch himself of[f] a balcony causing bodily injury to [a correction officer]" and that Appellant "spit saliva while being restrained." Criminal Information, 1/16/2020, at *1-2 (superfluous capitalization omitted). Appellant was charged with additional counts of aggravated assault by a prisoner, but the jury was hung on these charges, and those offenses were eventually *nolle prossed*.

[4] On December 20, 2022, Appellant filed a *pro se* petition pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. By order entered on December 22, 2022, the trial court reinstated Appellant's
*(Footnote Continued Next Page)*

On December 28, 2023, counsel for Appellant filed a petition with this Court seeking to withdraw from representation of Appellant. Petition to Withdraw, 12/28/2023. Preliminarily, we must address counsel's petition to withdraw. *Commonwealth v. Daniels*, 999 A.2d 590, 593 (Pa. Super. 2010) (citation omitted) ("When presented with an *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw."). In order to withdraw pursuant to *Anders*, "counsel must file a brief that meets the requirements established by our Supreme Court in [*Santiago*, **supra**]." *Commonwealth v. Harden*, 103 A.3d 107, 110 (Pa. Super. 2014) (parallel citation omitted). Specifically, counsel's *Anders* brief must comply with the following requisites:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and

---

post-sentence and direct appeal rights *nunc pro tunc* and appointed counsel to represent Appellant. Following a court-ordered extension for the transcription of notes of testimony, Appellant filed a counseled post-sentence motion on June 26, 2023. By order entered on June 27, 2023, the trial court denied relief. Counsel for Appellant filed a timely notice of appeal on July 12, 2023. On July 20, 2023, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Counsel for Appellant complied timely on July 31, 2023. On September 12, 2023, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a), relying entirely upon the reasoning as set forth in its June 27, 2023 order denying Appellant post-sentence relief.

- 3 -

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, [and] statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* (citation omitted).

Pursuant to **Commonwealth v. Millisock**, 873 A.2d 748 (Pa. Super. 2005), and its progeny, "[c]ounsel also must provide a copy of the **Anders** brief to his [or her] client." **Commonwealth v. Orellana**, 86 A.3d 877, 880 (Pa. Super. 2014) (internal quotation marks and citation omitted). The brief must be accompanied by a letter that advises the client of the option to "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the **Anders** brief." **Id.** "Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." **Commonwealth v. Goodwin**, 928 A.2d 287, 291 (Pa. Super. 2007) (*en banc*) (citation and internal quotation marks omitted).

Instantly, counsel for Appellant has satisfied the technical and procedural requirements of **Anders** and **Santiago**. In her **Anders** brief, counsel identified the pertinent factual and procedural history and made citation to the record. Counsel raises two issues challenging Appellant's judgment of sentence that could arguably support an appeal, but ultimately, counsel concludes that the appeal is wholly frivolous. **See Anders** Brief at

4-7. Counsel for Appellant attached a letter to her *Anders* brief advising Appellant of his options in compliance with *Millisock* and *Orellana*, **supra**. Moreover, both the *Anders* brief and the petition to withdraw contain proof of service to Appellant. Appellant has not filed a response to counsel's letter, the *Anders* brief, or the petition to withdraw. Accordingly, we proceed to conduct an independent review of the record to determine whether the appeal is wholly frivolous.

In the *Anders* brief, counsel raises the following issues for our review:

I.    The verdict in this case should be set aside, as the jury was not a jury of his peers, as he is black and all of the jury members were white.

II.   The venue or venire for [Appellant's] trial should have been based on the fact that details of his case were in the *Erie Times News* and other media news sources on October 29, 2019. [Appellant] argues that, based on the information in the article, jurors could have already made up their minds about the case – [Appellant] also alleges that the [Commonwealth] made a comment during jury selection that the case had not been in the media, so jurors were not asked about whether any media coverage would have led them to a conclusion of guilt or innocence prior to trial.

*Anders* Brief at 2 (numerals added).

Both of these issues implicate jury selection, and we are guided by the following standard of review:

The scope of *voir dire* rests in the sound discretion of the trial court, whose decision will not be reversed on appeal absent palpable error. The purpose of *voir dire* is to ensure the empaneling of a competent, fair, impartial, and unprejudiced jury. The scope of *voir dire* should therefore be limited to questions that attempt to disclose a potential juror's lack of qualification or fixed opinion regarding the defendant's guilt or innocence. A

prospective juror's personal views are of no moment absent a showing that these opinions are so deeply embedded as to render that person incapable of accepting and applying the law as given by the court.

***Commonwealth v. Scott***, 212 A.3d 1094, 1103 (Pa. Super. 2019) (citation omitted).

"[A] prosecutor's challenge to potential jurors solely on the basis of race violates the Equal Protection Clause of the United States Constitution" pursuant to the Supreme Court of the United States decision in ***Batson v. Kentucky***, 476 U.S. 79 (1986). ***Id.*** at 1105. "A ***Batson*** claim presents mixed questions of law and fact. Therefore, our standard of review is whether the trial court's legal conclusions are correct and whether its factual findings are clearly erroneous." ***Id.*** (citation omitted). When a defendant makes a ***Batson*** challenge during jury selection:

> First, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.
>
> The trial court should consider the totality of circumstances when determining whether the prosecutor acted with discriminatory intent or engaged in purposeful discrimination. This Court must give great deference to a trial court's determination that peremptory challenges were free of discriminatory intent, and we will not overturn the determination unless it was clearly erroneous.

***Id.*** at 1105–1106 (internal citations and quotations omitted).

- 6 -

Moreover,

[t]he defendant does not satisfy **Batson**'s first step of *prima facie* evidence merely by showing that the prosecutor used a number of strikes against venirepersons of one race. Nor is it sufficient to merely point out the fact that the prosecutor rejected a higher percentage of African–American potential jurors than non-African-American potential jurors. Instead, the defendant must preserve a full and complete record of the asserted **Batson** violation, as it would otherwise be impossible to conduct meaningful appellate review of the motivations of prosecutors in individual cases without such a record.

Within the *prima facie* case wherein a defendant must establish on the record the circumstances demonstrating purposeful discrimination, Pennsylvania law also requires that a defendant must make a record specifically identifying (1) the race or gender of all venirepersons in the jury pools, (2) the race or gender of all venirepersons remaining after challenges for cause, (3) the race or gender of those removed by the prosecutor, and (4) the race or gender of the jurors who served and the race or gender of jurors acceptable to the Commonwealth who were stricken by the defense.

In other words, for a **Batson** claim to be in a posture for the trial court to make a proper ruling, the following must happen. First, a defendant must make out a *prima facie* case on the record to the trial court. The *prima facie* case requires more than just noting on the record the race of excluded jurors and the numerical composition of the prosecution's strikes. The *prima facie* case must be detailed enough for the trial court eventually to assess whether there has been purposeful discrimination to establish a **Batson** violation. The *prima facie* case must identify the circumstances a defendant believes establishes purposeful discrimination, including those record items required under Pennsylvania law. Second, once a defendant qualifies the record with a sufficient *prima facie* case, the prosecution is then obligated to provide race-neutral explanations for the strikes being questioned. Finally, once the record is complete with a defendant's *prima facie* case and the prosecution's race neutral explanations, the trial court has a proper foundation to proceed to the third step, in which it assesses the totality of the circumstances surrounding juror selection and determines

- 7 -

whether the defendant has made out a case of purposeful discrimination.

**Commonwealth v. Murray**, 248 A.3d 557, 568 (Pa. Super. 2021) (internal quotations and citations omitted).

Additionally, with regard to pre-trial publicity, our Supreme Court has stated that "[n]ormally, one who claims that he has been denied a fair trial because of prejudicial pre-trial publicity must show actual prejudice in the empaneling of the jury." **Commonwealth v. Casper**, 392 A.2d 287, 291 (Pa. 1978) (citation omitted). "In certain cases there can be pretrial publicity so sustained, so pervasive, so inflammatory, and so inculpatory as to demand a change of venue without putting the defendant to any burden of establishing a nexus between the publicity and actual jury prejudice, because the circumstances make it apparent that there is a substantial likelihood that a fair trial cannot be had." **Id.** (internal quotations and citations omitted). The "presumption of prejudice pursuant to this exception requires the presence of exceptional circumstances [and] generalizations in this area are difficult because each case must turn on its special facts." **Id.** (citations omitted). "It is clear that the mere existence of pre-trial publicity does not warrant a presumption of prejudice [and] a possibility that prospective jurors will have formed an opinion based on news accounts will not suffice." **Id.** at 291-292 (citation omitted). Courts "instead look to more discrete factors, [for example], whether the pre-trial publicity was, on the one hand, factual and objective, or, on the other hand, consisted of sensational, inflammatory and slanted articles demanding conviction." **Id.** at 292 (citations omitted).

- 8 -

In addition, we adhere to the following legal precepts:

The fundamental tool for appellate review is the official record of the events that occurred in the trial court. To ensure that an appellate court has the necessary records, the Pennsylvania Rules of Appellate Procedure provide for the transmission of a certified record from the trial court to the appellate court. The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal. Thus, an appellate court is limited to considering only the materials in the certified record when resolving an issue. In this regard, our law is the same in both the civil and criminal context because, under the Pennsylvania Rules of Appellate Procedure, any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record. The emphasis on the certified record is necessary because, unless the trial court certifies a document as part of the official record, the appellate judiciary has no way of knowing whether that piece of evidence was duly presented to the trial court or whether it was produced for the first time on appeal and improperly inserted into the reproduced record. Simply put, if a document is not in the certified record, the Superior Court may not consider it.

This Court cannot meaningfully review claims raised on appeal unless we are provided with a full and complete certified record. This requirement is not a mere technicality nor is this a question of whether we are empowered to complain *sua sponte* of *lacunae* in the record. In the absence of an adequate certified record, there is no support for an appellant's arguments and, thus, there is no basis on which relief could be granted.

The certified record consists of the original papers and exhibits filed in the lower court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court. Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty. To facilitate an appellant's ability to comply with this requirement, our Supreme Court adopted the following procedural rule effective as of June 1, 2004:

- 9 -

> The clerk of the lower court shall, at the time of the transmittal of the record to the appellate court, mail a copy of the list of record documents to all counsel of record, or if unrepresented by counsel, to the parties at the address they have provided to the clerk. The clerk shall note on the docket the giving of such notice.

Pa.R.A.P.1931(d). As the explanatory comment to Rule 1931 indicates, if counsel (or a party) discovers that anything material has been omitted from the certified record, the omission can be corrected pursuant to the provisions of Rule of Appellate Procedure 1926. Under Rule 1926, an appellate court may direct that an omission or misstatement shall be corrected through the filing of a supplemental certified record. However, this does not alter the fact that the ultimate responsibility of ensuring that the transmitted record is complete rests squarely upon the appellant and not upon the appellate courts.

With regard to missing transcripts, the Rules of Appellate Procedure require an appellant to order and pay for any transcript necessary to permit resolution of the issues raised on appeal. If a cross-appeal has been taken, the cross-appellant shares the duty to order and pay for the necessary transcripts. Pa.R.A.P.1911(b). When the appellant or cross-appellant fails to conform to the requirements of Rule 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review. It is not proper for either the Pennsylvania Supreme Court or the Superior Court to order transcripts nor is it the responsibility of the appellate courts to obtain the necessary transcripts.

In the absence of specific indicators that a relevant document exists but was inadvertently omitted from the certified record, it is not incumbent upon this Court to expend time, effort and manpower scouting around judicial chambers or the various prothonotaries' offices of the courts of common pleas for the purpose of unearthing transcripts, exhibits, letters, writs or PCRA petitions that well may have been presented to the trial court but never were formally introduced and made part of the certified record. If, however, a copy of a document has been placed into the reproduced record, or if notes of testimony are cited specifically by the parties or are listed in the record inventory certified to this Court, then we have reason to believe that such evidence exists. In this type of situation, we might well make an informal inquiry to see if there was an error in transmitting the

certified record to this Court. We might also formally remand the matter to the trial court to ascertain whether notes of testimony or other documentation can be located and transmitted. If a remand is necessary, it is appropriate to direct the trial court to determine why the necessary documentation was omitted from the certified record. An appellant should not be denied appellate review if the failure to transmit the entire record was caused by an extraordinary breakdown in the judicial process. However, if the appellant caused a delay or other problems in transmitting the certified record, then he or she is not entitled to relief and the judgment of the court below should be affirmed.

*Commonwealth v. Preston*, 904 A.2d 1, 6-8 (Pa. Super. 2006) (*en banc*) (internal quotations and case citations omitted).

Here, upon review of the certified record, there is no record of the composition of the venire or the manner and method by which it was assembled. Moreover, there is no transcript of the questioning during jury *voir dire*. Thus, our appellate review of jury selection has been hampered and Appellant failed to establish a *prima facie* case on the record to the trial court. There is no notation on the official docket that a transcript of *voir dire* was ordered and transcribed. In fact, on September 15, 2021, the day before trial, Appellant signed a waiver of the presence of the judge and a court reporter during the examination and challenge of prospective jurors. On September 20, 2021, the trial court filed that waiver and made it part of the certified record. As such, without information concerning the composition and assembly of the venire and without notes of testimony from *voir dire*, we cannot meaningfully review Appellant's claims pertaining to jury selection. There is no record evidence regarding selection of the venire or the eventual composition of the jury and Appellant failed to make a *prima facie* showing

- 11 -

that the Commonwealth struck prospective jurors on account of race.

Moreover, there was no evidence that Appellant asked potential jurors about

pre-trial publicity. Regardless, the mere existence of pre-trial publicity does

not warrant a presumption of prejudice and the mere possibility of formed

opinions based on news accounts will not suffice.[5] Accordingly, upon our

_____

[5] Counsel for Appellant has included a newspaper article from the ***Erie Times-News*** dated October 29, 2019, regarding this case. ***See Anders*** Brief at 6 n.2. This article is not contained in the certified record, however, and we should not consider it. The article in question states as follows:

> ALBION—An inmate at the State Correctional Institution at Albion who told investigators that he started a fire in his cell because of not being able to eat his meals was charged by the Pennsylvania State Police with arson and other offenses in an early September incident at the state prison.
>
> James A. Miller Jr., 26, was arraigned Monday afternoon by Springfield Township District Judge Chris MacKendrick on charges including felony counts of arson, aggravated assault, risking catastrophe and aggravated harassment by prisoner in an incident that happened on the early afternoon of September 8.
>
> State police charge that Miller started a fire in his cell, endangering other inmates and prison staff, and fought with correction officers who responded to the incident, according to information in Miller's criminal complaint.
>
> Investigators wrote in the affidavit of probable cause that a corrections officer discovered the fire in Miller's cell and found Miller sitting on the floor of his cell with a bed sheet tied around his neck. Miller also attempted to jump from a second-story balcony outside of his cell when officers were escorting him out of it, and he spit on the corrections officers, state police charge in the affidavit.

*(Footnote Continued Next Page)*

review of the certified record and for all of the foregoing reasons, we agree with counsel's assessment that Appellant's appeal is wholly frivolous. Moreover, our independent review of the record reveals no additional, non-frivolous claims. Therefore, we grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

Judgment of sentence affirmed. Petition to withdraw granted.

_____

Two corrections officers sought medical attention following the incident.  The fire caused $512[.00] in damages, according to the affidavit.

Miller is serving a state prison sentence out of Delaware County.

***Erie Times-News***, 10/29/2019 (unpaginated).   This pre-trial article is a factual and objective recitation and merely states the allegations taken directly from the criminal complaint and affidavit of probable cause.  It was not sensational, inflammatory, slanted, or demanding conviction.  Counsel for Appellant has not pointed to any additional pre-trial publicity in this matter and our independent research has not revealed any.  There is nothing in the certified record to suggest that pre-trial publicity was so sustained and so pervasive as to require a new trial.  In fact, there is no evidence that jurors were even aware of the October 29, 2019 article.  Finally, we note that the trial court instructed the jurors before deliberation that they were "the sole judges of the facts" and that they must "consider the evidence, to find the facts, and to apply the law to the facts as [they] find them in order to decide whether [Appellant] has been proven guilty beyond a reasonable doubt." N.T., 9/17/2021, at 52.   Jurors were further instructed that they should "apply common sense and draw upon [] everyday practical knowledge of life" and could not "use a cell[ular telephone] a computer, or any other electronic device with communication capabilities during [] deliberation." ***Id.*** at 62.   "A jury is presumed to follow instructions the trial court provides[.]" ***Commonwealth v. Johnson***, 289 A.3d 959, 1009 (Pa. 2023).   There is simply no record evidence that the jury was prejudiced in this matter by pre-trial publicity.

- 13 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 05/07/2024